R. Rex Parris, Esq. (SBN 96567)
  rrparris@rrexparris.com
Alexander R. Wheeler, Esq. (SBN 239541)
  awheeler@rrexparris.com
Kitty Szeto, Esq. (SBN 258136)
  kszeto@rrexparris.com
John M. Bickford, Esq. (SBN 280929)
  jbickford@rrexparris.com
**R. REX PARRIS LAW FIRM**
43364 10th Street West
Lancaster, California 93534
Telephone:  (661) 949-2595
Facsimile:   (661) 949-7524

Daniel A. Carpio, Esq. (SBN 280818)
  carpio@dunnpi.com
Michael B. Turner, Esq. (SBN 281229)
  turner@dunnpi.com
**DUNN & ASSOCIATES**
854 Pico Boulevard
Santa Monica, California 90405
Telephone:  (310) 393-2769
Facsimile:   (310) 396-7575

Attorneys for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY LOEWEN and JONATHAN WRIGHT, individually, and on behalf of other members of the general public similarly situated, | Case No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| LYFT, INC., a Delaware corporation, and DOES 1 through 100, inclusive, | |
| Defendants. | |

1

Plaintiffs CASEY LOEWEN and JONATHAN WRIGHT, on behalf of themselves, and all others similarly situated, and the general public, file this Complaint against Defendant LYFT, INC., a Delaware corporation, and DOES 1 through 100 inclusive. Plaintiffs' allegations are based upon information and belief and upon investigation of Plaintiffs' counsel, except for allegations specifically pertaining to Plaintiffs, which are based upon Plaintiffs' personal knowledge.

## JURISDICTION & VENUE

1.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)–(6), because there is (1) at least 100 class members, (2) minimal diversity, and (3) an amount in controversy that exceeds $5 million, exclusive of interest and costs.

2.      This Court has personal jurisdiction over Defendant LYFT, INC. because it is domiciled in the Northern District of California. *See Milliken v. Meyer*, 331 U.S. 457, 462–63 (1940).

3.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c).

## PARTIES

4.      Plaintiff CASEY LOEWEN ("LOEWEN") is an individual who, at all times relevant herein, was a resident of San Diego, California. Plaintiff brings this action on behalf of himself, and the general public.

5.      Plaintiff JONATHAN WRIGHT ("WRIGHT") is an individual who, at all times relevant herein, was a resident of Los Angeles, California. Plaintiff brings this action on behalf of himself, and the general public.

6.      Plaintiff LOEWEN and Plaintiff WRIGHT will collectively be referred to hereafter as "Plaintiffs."

7.      Defendant LYFT, INC. is a corporation formed under the laws of Delaware, having its principal place of business at 2300 Harrison Street, San Francisco, California 94110.

1

8.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sue said defendants by such fictitious names.  Plaintiffs will amend this complaint to allege the true names and capacities of DOES 1 through 100 when ascertained.  Each of these fictitiously named defendants participated or acted in concert with Defendant LYFT, INC. and is therefore responsible in some manner for the acts, occurrences, and/or omissions alleged herein, and has thereby proximately caused damages to Plaintiffs and the class, and is liable to Plaintiffs and the class by reason of the facts alleged herein.

9.     Plaintiffs are informed and believe, and based thereon allege, that at all times herein mentioned, each of the defendants was the agent, partner, successor, or employee of Defendant LYFT, INC. and, in doing the things complained of herein, was acting within the course and scope of such agency, partnership, succession, or employment.  All acts and omissions alleged to have been done by defendants, and each of them, were done with the consent, knowledge and ratification of all other defendants.

10.     Defendant LYFT, INC. and DOES 1 through 100 will collectively be referred to hereafter as "LYFT".

## FACTUAL ALLEGATIONS

### A.     BACKGROUND FACTS

11.     LYFT is a San Francisco-based transportation network company that facilitates peer-to-peer ridesharing through its mobile-phone application by connecting passengers who need a ride to drivers who have a car.  Passengers use the app by entering their pickup address and where they would like a ride to.  Once a LYFT driver accepts a passenger's ride request, the app displays a photo of the driver and the car's license plate number and model.  The car arrives bearing LYFT's signature pink mustache for easy identification.

12.     In order to become a LYFT driver, applicants need to fill out an application, take a "welcome ride," and pass a background check, in that order.  The

2

application asks for basic personal and automobile information.  The "welcome ride" consists of meeting with a "mentor," a vehicle inspection, and a "practice ride."  And the background check examines of the applicant's driving record and criminal history.  Parts of the background check are conducted by LYFT directly, other parts are conducted by a third-party.  Once a driver is approved, he or she may immediately begin giving rides using the LYFT app.

**B.**   **LYFT'S TWO $1,000 NEW DRIVER REFERRAL PROMOTIONS**

13.   In an effort to grow its driver community and compete with other rideshare companies (such as Uber), LYFT launched two $1,000 new driver referral programs on or about February 25, 2015.  These programs were available in the following cities: Atlanta, Austin, Boston, Chicago, Dallas, Denver, Los Angeles, Miami, Nashville, Philadelphia, San Diego, San Francisco, San Jose, Seattle, and Washington D.C.

14.   The first of these promotions was a "$1,000 Double-Sided Referral Bonus" program, whereby current LYFT drivers could refer new drivers, and both the referring driver and the new driver would each receive $1,000.  In order to qualify for the promotion, the new driver had to: (1) apply on or after midnight on Wednesday, February 25, 2015; (2) enter his or her referrer's code on signup; and (3) complete their first ride on or before Thursday, March 5, 2015.

15.   LYFT communicated this promotion in two ways: (1) an email to all of its current drivers in participating cities; and (2) on its website, under the "Current Promotions" section.

3

a.    The email set forth the general terms of the promotion and stated that "it'll take a couple days for us to run your friend's background check."  A copy of this email is depicted below:



b.    The website—which the email contained a hyperlink to—also included the terms of the agreement.  A screenshot of the relevant portion of the website is depicted below:

16.    The second promotion was a "$1,000 Sign-On Bonus," which essentially allowed new drivers to sign up directly without the need of being referred.  In order to

4

1    qualify for the promotion, the new driver had to: (1) apply on or after midnight on

2    Wednesday, February 25, 2015; (2) enter the code BENJAMINS on signup; and (3)

3    complete their first ride on or before Thursday, March 5, 2015.  A screenshot of the

4    relevant portion of the website is depicted below:

5

6

7

8

9

10

11

12   **C.      BOTH PROMOTIONS ATTRACT THOUSANDS OF NEW DRIVERS.**

13           17.     Both the "$1,000 Double-Sided Referral Bonus" and the "1,000 Sign-On

14   Bonus" promotions were very popular, and resulted in thousands of new driver

15   applications being filed in the first 24 hours of the promotions being offered.

16           18.     As a result, LYFT stopped offering the promotions in several of the

17   participating cities.  For example, on February 27, 2015, LYFT sent an email out to

18   drivers in the Los Angeles area stating that the two promotions "resulted in thousands

19   of new applications – proving that no one can hustle as hard as Lyft drivers.  Because

20   of the unprecedented response, we're no longer offering the bonuses for new

21   applications in Los Angeles."  It also noted that if an application was filed "before 12

22   p.m. (3 p.m. EST) today, they're still eligible for the $1,000 bonus" if their "first ride is

23   completed by March 5."  A copy of the email sent to Los Angeles drivers and new

24   applicants is depicted below:

25

26

27

28

**Success! Thanks for all the referrals.**
.

Yesterday we announced our $1,000 sign-on and driver referral bonuses, which resulted in thousands of new applications - proving that no one can hustle as hard as Lyft drivers.

**Because of the unprecedented response, we're no longer offering the bonuses for new applications in Los Angeles.**

If you or your friends applied before 12 p.m. (3 p.m. EST) today, they're still eligible for the $1,000 bonus. Just make sure that first ride is complete by March 5.

We'll continue growing passenger demand and will be looking for new drivers again soon.

Offer and eligibility is subject to change, and available in select cities only. Head to the Help Center to see current promotions.

:

19.     Substantially similar emails were sent out to other participating cities. The only parts of the email that were different were the city and the date the promotion stop accepting new drivers in that city.

**D.  LYFT FAILS TO TIMELY PROCESS BACKGROUND CHECKS, MAKING IT IMPOSSIBLE FOR NEW DRIVERS TO GIVE THEIR FIRST RIDE BEFORE MARCH 5TH.**

20.     New drivers that signed up under the "$1,000 Double-Sided Referral Bonus" and the "1,000 Sign-On Bonus" began working their way through the application process in order to be able to complete their first ride by March 5th. Although drivers generally had no trouble filling out their new application, inputting the appropriate promotion code, and completing their "welcome ride," LYFT and its third-party vendor were not processing background checks fast enough to ensure that new drivers would be able to give their first ride by March 5th.  Indeed, despite the fact that LYFT stated that it would only take a "couple days" to approve a background check, many new drivers were told by LYFT and its third-party vendor that it would

6

take at least one to two weeks for their background check to be approved.

21.    On March 4, 2015, LYFT sent an email out to all of its new applicants and drivers in participating cities.  It stated that "[l]ast week's invitation – apply to be driver, give 1 ride by March 5, and make $1,000 – brought the biggest wave of applicants in Lyft history.  As we're processing the applications, its important that we continue to fulfill our safety obligations.  Some of these steps, including DMV and background checks, are outside our control and can vary in length for different applicants.  It is possible that you won't qualify for the promotion if all steps aren't completed by the March 5th deadline, along with the ride requirement."  A copy of this email is depicted below:

**Update about driver
sign-on bonuses**
.

Last week's invitation - apply to be a driver, give 1 ride by March 5, and make $1,000 - brought the biggest wave of applicants in Lyft history.

As we're processing the applications, it's important that we continue to fulfill our safety obligations. Some of these steps, including DMV and background checks, are outside our control and can vary in length for different applicants.

It is possible that you won't qualify for the promotion if all steps aren't completed by the March 5 deadline, along with the ride requirement. In the meantime, you can check the status of your application at lyft.com/drivers.

We'll be in touch again via email with another update on Friday. Thank you for your patience.

22.    On March 5, 2015, LYFT send out another email stating that it "vastly underestimated the volume of applications we would receive for our $1,000 sign-on promotion . . . .  We owe it to the driver community and our passengers to make sure our approval process is rigorous and complete.  All elements of our safety process are imperative and can take time – that means some applications haven't been approved

7

1  yet even though the applicant's DMV and background checks are in.  We know this

2  can be frustrating."  LYFT then stated that it would extend the first ride requirement

3  "deadline to March 12 for those who applied for this promotion and pass[ed] their

4  DMV and background check by March 5."  LYFT did not, however, offer extensions to

5  individuals whose background check was not approved until after March 5th, which

6  was a vast majority of applicants.  A copy of this email is depicted below:



An Open Letter from John

Hi

Lyft learned a lesson this week, and we're sorry for the frustration it caused you. We vastly underestimated the volume of applications we would receive for our $1,000 sign-on promotion, which was created to help us keep up with record-breaking passenger demand.

We owe it to the driver community and our passengers to make sure our approval process is rigorous and complete. All elements of our safety process are imperative and can take time - that means some applications haven't been approved yet even though the applicant's DMV and background checks are in. We know this can be frustrating.

Based on ideas from our community, here are the actions we're taking:
- **Extension of deadline to March 12 for those who applied for this promotion and pass their DMV and background check by March 5.** We're still completing our internal review of many applications, but if your DMV and background checks pass by end of day today (March 5), we're providing an extension until March 12 to meet your ride requirement.

- **We, at Lyft, will not benefit from an application if an applicant does not qualify for the promotion and does not want to continue through the application process.** By default, we won't use any information from the applications of drivers who don't qualify for the promotion, unless they would like us to continue with the application.

You'll receive an email from us tomorrow evening with your eligibility for the extension outlined above. If you are not eligible, you will have the choice of whether or not to continue with your application.

It's the responsibility of our team to make sure whenever we develop big ideas, we continue to keep the best interests of drivers top of mind. That's the company we always strive to be.

We still have some work to do to get there - and it's work we want to do together with you. Thanks to those of you who gave us productive feedback on how to improve, and for holding us to a higher standard.

John Zimmer
Lyft Co-Founder

CLASS ACTION COMPLAINT

23.     LYFT's actions caused outrage throughout the LYFT community, with many referring drivers and new drivers believing the entire promotion had been a scam to attract new drivers without having to pay them $1,000.  Many drivers took to the Internet to voice their frustrations, accompanied by the hashtag #lyftgate.

**E.     PLAINTIFF LOEWEN'S EXPERIENCE**

24.     Plaintiff LOEWEN has been a LYFT driver in San Diego, California since August 2013.

25.     On February 26, 2015, Plaintiff LOEWEN received the email offering the "$1,000 Double-Sided Referral Bonus" promotion depicted in paragraph 15.a.

26.     Pursuant to the promotion, Plaintiff LOEWEN referrers Lauren Turton to be a San Diego driver for LYFT, who completed the online portion of the application using Plaintiff LOEWEN's referral code on February 26, 2015.

27.     On March 3, 2015, Lauren Turton completes all elements of her "welcome ride."   At this point, nothing remains for Lauren Turton to do except her first ride, which cannot happen until LYFT, and LYFT's third-party vendor, approve her background check and finalize her application.

28.     On March 4, 2015, Lauren Turton is told that her background check is completed, except for the San Diego criminal background check portion, which will not be completed until March 10, 2015 (i.e., 7 days after she completed her welcome ride, and 5 days after the deadline to give her first ride expired).

29.     On March 8, 2015, Plaintiff LOEWEN is informed that Lauren Turton did not complete her first ride before March 5th because her background check was not given by March 5th, and therefore Plaintiff LOEWEN will not be receiving $1,000.

30.     Lauren Turton's background check was eventually approved on March 9, 2015, and she completed her first ride the same day.

**F.     PLAINTIFF WRIGHT'S EXPERIENCE**

31.     On February 27, 2015, Plaintiff WRIGHT applied to be a new driver using the BENJAMIN'S code pursuant to the "$1,000 Sign-On Bonus."

9

32.     On February 27, 2015, Plaintiff WRIGHT completed all elements of his "welcome ride."  At this point, nothing remains for Plaintiff WRIGHT to do except his first ride, which cannot happen until LYFT, and LYFT's third-party vendor, approve his background check and finalize his application.

33.     On March 4, 2015, Plaintiff WRIGHT called LYFT's third-party vendor to check on the status of his background check.  He was told that they'd only just received it from LYFT, and that it's not scheduled to be completed until March 9, 2015.  Plaintiff WRIGHT asked if they could expedite his background check, but was told that only LYFT had the ability to request background checks to be expedited.

34.     On March 7, 2015, Plaintiff WRIGHT received an email from LYFT stating, "Thanks for applying to be a driver during our recent referral promotion, which expired last night.  According to our records, you did not qualify for the extension we announced Thursday."  A copy of the email is depicted below:

**Status of Your Application**

Thanks for applying to be a driver during our recent referral promotion, which expired last night. According to our records, you did not qualify for the extension we announced Thursday.

We won't contact you or use the personal information from your application, unless you'd like to proceed with becoming a driver on the Lyft platform. If you'd like to move forward with your application, please let us know by clicking below.

**PROCESS MY APPLICATION**

I still want to be a Lyft driver. By clicking above I authorize Lyft to use my personal information to process my application to become a Lyft driver, subject to the Terms of Service.

/ / / /

/ / / /

/ / / /

10

## <u>CLASS ACTION ALLEGATIONS</u>

35.    Plaintiffs bring this action on behalf of themselves and on behalf of others similarly situated, and thus, seek class certification under Federal Rule of Civil Procedure 23.

36.    The proposed subclasses are defined as follows.

**<u>DRIVER SUBCLASS</u>:**                 The Driver Subclass is comprised of all persons who: (1) were a LYFT driver between February 25, 2015 and March 5, 2015; (2) referred a new driver to LYFT under the "$1,000 Double-Sided Referral Bonus Program"; but (3) did not receive their $1,000 because their referral's background check was not approved prior to March 5th.   This subclass is represented by Plaintiff LOEWEN.

**<u>NEW DRIVER SUBCLASS</u>:**          The New Driver Subclass is comprised of all persons who: (1) were either referred under "$1,000 Double-Sided Referral Bonus" or applied under "$1,000 Sign-On Bonus" but (2) did not receive $1,000 because their background check was not approved prior to March 5th. This subclass is represented by Plaintiff WRIGHT.

37.    In addition, or in the alternative, to the above-defined subclasses, Plaintiffs reserve the right to establish additional subclasses as appropriate to facilitate the effective management of the class.

38.    Plaintiffs are informed and believe, and based thereon allege, that the subclasses meet the requirements of Federal Rule of Civil Procedure 23:

a.    Plaintiffs are informed and believe, and based thereon allege, that

11

the class and subclass members are so numerous that joinder of all class members is impracticable.  Although the membership of the two subclasses is unknown to Plaintiffs at this time, the identity of such membership is readily ascertainable by inspection of LYFT's business records.

b.      Plaintiffs are members of the subclasses that they seek to represent, and Plaintiffs' claims are typical of the claims of the other class members. Plaintiffs are informed and believe, and based thereon allege, the LYFT made the same promotional offer to each of the members of the subclasses.  LYFT therefore has the same obligations to Plaintiffs and the other class members. Finally, Plaintiffs are informed and believe, and based thereon allege, that the nature of the damages and their causation will be the same for Plaintiffs and the other class members.

c.      Plaintiffs will fairly and adequately represent and protect the interests of the subclasses they seek to represent because: (1) Plaintiffs have retained experienced litigation counsel with significant experience in class action litigation who will adequately represent the interests of the class and subclasses; (2) Plaintiffs and their counsel are aware of no conflicts of interests between Plaintiffs and absent class members; and (3) Plaintiffs are knowledgeable concerning the subject matter of this action and will assist counsel in the prosecution of this action.

d.      Plaintiffs are informed and believe, and based thereon allege that a class action provides a fair and efficient method of adjudicating this controversy and is superior to other available methods of adjudication in that: (1) neither the size of the class, nor any other factor, make it likely that difficulties will be encountered in the management of this action as a class action; (2) the prosecution of separate actions by individual class members or the individual joinders of all class members in this action is impracticable, and would create a massive and unnecessary burden on the resources of the courts, and could result

in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the class; (3) because of the disparity of resources available to LYFT verses those available to individual class members, prosecution of separate actions would work a financial hardship on many class members; (4) the conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each class member and meets all due process requirements as to fairness to all parties; and (5) all of the claims arise out of the same circumstances and course of conduct.

39.     There are common questions of law and fact as to the class members that predominate over questions affecting only individual members.

### FIRST CAUSE OF ACTION
**(Breach of Unilateral Contract (Driver Subclass))**
**(Against Defendant LYFT, INC. and DOES 1 through 100)**

40.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

41.     On or about February 25, 2015, LYFT offered its current divers in Atlanta, Austin, Boston, Chicago, Dallas, Denver, Los Angeles, Miami, Nashville, Philadelphia, San Diego, San Francisco, San Jose, Seattle, and Washington D.C. $1,000 if they referred a new driver who: (1) applied on or after midnight on February 25, 2015, (2) entered the referring driver's code on signup, and (3) completed their first ride on or before March 5, 2015.

42.     Plaintiff LOEWEN and the other members of the Driver Subclass substantially performed this contract by referring new drivers who: (1) applied on or after midnight on Wednesday, February 25, 2015; (2) entered their code on signup; and (3) took all steps necessary to completed their first ride on or before March 5, 2015, including, but not limited to, filling out their application and completing their "welcome ride", but (4) could not actually give their first ride by March 5th through no

13

fault of their own because LYFT did not approve their background checks or finalize their applications prior to March 5th.

43.   On or about March 6, 2015, LYFT breached this contract by stating that it would not by paying $1,000 to Plaintiff LOEWEN and other drivers whose referrals did not give their first ride by March 5, 2015 even though they had substantially performed on the contract.

44.   As a direct and foreseeable result of LYFT's breach, Plaintiff LOEWEN and the other members of the Driver Subclass have been subject to damages in the amount of $1,000 per substantially performing new driver and other foreseeable incidental and consequential damages.

## SECOND CAUSE OF ACTION
### (Breach of Unilateral Contract (New Driver Subclass))
### (Against Defendant LYFT, INC. and DOES 1 through 100)

45.   Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

46.   On or about February 25, 2015, LYFT offered new drivers in Atlanta, Austin, Boston, Chicago, Dallas, Denver, Los Angeles, Miami, Nashville, Philadelphia, San Diego, San Francisco, San Jose, Seattle, and Washington D.C. $1,000 if they: (1) applied on or after midnight on February 25, 2015, (2) entered either a referring driver's code or the BENJAMINS code on signup, and (3) completed their first ride on or before March 5, 2015.

47.   Plaintiff WRIGHT and the other members of the Driver Subclass substantially performed this contract by: (1) applying on or after midnight on Wednesday, February 25, 2015; (2) entering a referring driver's code or the BENJAMINS code on signup; and (3) taking all steps necessary to completed their first ride on or before March 5, 2015, including, but not limited to, filling out their application and completing their "welcome ride", but (4) could not actually give their first ride by March 5th through no fault of their own because LYFT did not approve

CLASS ACTION COMPLAINT

their background checks prior to March 5th.

48.     On or about March 6, 2015, LYFT breached this contract by stating that it would not by paying $1,000 to Plaintiff WRIGHT and other new drivers who did not give their first ride by March 5, 2015 even though they had substantially performed on the contract.

49.     As a direct and foreseeable result of LYFT's breach, Plaintiff WRIGHT and the other members of the New Driver Subclass have been subject to damages in the amount of $1,000 and other foreseeable incidental and consequential damages.

## THIRD CAUSE OF ACTION
### (Fraud—Intentional Misrepresentation (Driver Subclass))
### (Against Defendant LYFT, INC. and DOES 1 through 100)

50.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

51.     LYFT communicated multiple material misrepresentations to Plaintiff LOEWEN and the Driver Subclass, namely that it would only "take a couple of days" to complete a background check.

52.     LYFT knew that the misrepresentations it communicated to Plaintiff LOEWEN and the Driver Subclass were false when they made them.

53.     LYFT communicated the misrepresentations to Plaintiff LOEWEN and the Driver Subclass with the intent to induce Plaintiff LOEWEN and the Driver Subclass to act on them.  Specifically, LYFT made the misrepresentations detailed above with the intent that Plaintiff LOEWEN and the Driver Subclass would take them as true, and therefore referrer new drivers to LYFT.

54.     Plaintiff LOEWEN and the Driver Subclass reasonably and justifiably relied on LYFT's misrepresentation when they referred new drivers to LYFT.

55.     Plaintiff LOEWEN and the Driver Subclass have suffered damages as a result of their actual and justifiable reliance on LYFT's misrepresentations in the amount of $1,000 per referred driver.

56.     Plaintiff LOEWEN is informed and believes that the LYFT acted with intent to injure Plaintiff LOEWEN and the Driver Subclass, that the LYFT acted with a willful and knowing disregard of Plaintiff LOEWEN's and the Driver Subclass's rights in a manner which would be looked down upon by reasonable people, and that LYFT did so intending to harm Plaintiff LOEWEN and the Driver Subclass.

57.     Plaintiff LOEWEN and the Driver Subclass are entitled to exemplary and punitive damages for the sake of example and by way of punishing LYFT in an amount to be established at trial.

## FOURTH CAUSE OF ACTION
**(Fraud—Intentional Misrepresentation (New Driver Subclass))**
**(Against Defendant LYFT, INC. and DOES 1 through 100)**

58.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

59.     LYFT communicated multiple material misrepresentations to Plaintiff WRIGHT and the New Driver Subclass, namely that it would only "take a couple of days" to complete a background check.

60.     LYFT knew that the misrepresentations it communicated to Plaintiff WRIGHT and the New Driver Subclass were false when they made them.

61.     LYFT communicated the misrepresentations to Plaintiff WRIGHT and the New Driver Subclass with the intent to induce Plaintiff WRIGHT and the New Driver Subclass to act on them.   Specifically, LYFT made the misrepresentations detailed above with the intent that Plaintiff WRIGHT and the New Driver Subclass would sign up to become a LYFT driver.

62.     Plaintiff WRIGHT and the New Driver Subclass reasonably and justifiably relied on LYFT's misrepresentation when they signed up to become a LYFT driver and completed their "welcome ride."

63.      Plaintiff WRIGHT and the New Driver Subclass have suffered damages as a result of their actual and justifiable reliance on LYFT's misrepresentations in the

16

amount of $1,000 each.

64.     Plaintiff WRIGHT is informed and believes that the LYFT acted with intent to injure Plaintiff WRIGHT and the New Driver Subclass, that the LYFT acted with a willful and knowing disregard of Plaintiff WRIGHT and the New Driver Subclass rights in a manner which would be looked down upon by reasonable people, and that LYFT did so intending to harm Plaintiff WRIGHT and the New Driver Subclass.

65.     Plaintiff WRIGHT and the New Driver Subclass are entitled to exemplary and punitive damages for the sake of example and by way of punishing LYFT in an amount to be established at trial.

**FIFTH CAUSE OF ACTION**
**(Fraud—Concealment (Driver Subclass))**
**(Against Defendant LYFT, INC. and DOES 1 through 100)**

66.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

67.     LYFT intentionally failed to disclose to Plaintiff LOEWEN and the other members of the Driver Subclass that it may take more than a "couple of days" to complete a background check.

68.     Plaintiff LOEWEN and the other members of the Driver Subclass were unaware that it may take more than a "couple of days" to complete a background check.

69.     Plaintiff LOEWEN and the other members of the Driver Subclass reasonably and justifiably relied on LYFT's material misrepresentation when they referred new drivers to LYFT.

70.     Plaintiff LOEWEN and the other members of the Driver Subclass have suffered damages as a result of their actual and justifiable reliance on LYFT's deception in the amount of $1,000 per referred driver.

71.     Plaintiff LOEWEN is informed and believes that LYFT acted with intent

17

to injure Plaintiff LOEWEN and the other members of the Driver Subclass, that the LYFT acted with a willful and knowing disregard of Plaintiff LOEWEN and the other members of the Driver Subclass rights in a manner which would be looked down upon by reasonable people, and that LYFT did so intending to harm Plaintiff LOEWEN and the other members of the Driver Subclass.

72.    Plaintiff LOEWEN and the other members of the Driver Subclass are entitled to exemplary and punitive damages for the sake of example and by way of punishing LYFT in an amount to be established at trial.

## SIXTH CAUSE OF ACTION
### (Fraud—Concealment (New Driver Subclass))
### (Against Defendant LYFT, INC. and DOES 1 through 100)

73.    Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

74.    LYFT intentionally failed to disclose to Plaintiff WRIGHT and the other members of the New Driver Subclass that it may take more than a "couple of days" to complete a background check.

75.    P Plaintiff WRIGHT and the other members of the New Driver Subclass were unaware that it may take more than a "couple of days" to complete a background check.

76.    Plaintiff WRIGHT and the other members of the New Driver Subclass reasonably and justifiably relied on LYFT's material misrepresentation when they signed up to become a LYFT driver and completed their "welcome ride."

77.    Plaintiff WRIGHT and the other members of the New Driver Subclass have suffered damages as a result of their actual and justifiable reliance on LYFT's deception in the amount of $1,000 each.

78.    Plaintiff WRIGHT is informed and believes that LYFT acted with intent to injure Plaintiff WRIGHT and the other members of the New Driver Subclass, that the LYFT acted with a willful and knowing disregard of WRIGHT and the other

18

members of the New Driver Subclass rights in a manner which would be looked down upon by reasonable people, and that LYFT did so intending to harm WRIGHT and the other members of the New Driver Subclass.

79.     WRIGHT and the other members of the New Driver Subclass are entitled to exemplary and punitive damages for the sake of example and by way of punishing LYFT in an amount to be established at trial.

**SEVENTH CAUSE OF ACTION**
**(Fraud—Negligent Misrepresentation (Driver Subclass))**
**(Against Defendant LYFT, INC. and DOES 1 through 100)**

80.     Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

81.     LYFT communicated multiple material misrepresentations to Plaintiff LOEWEN and the Driver Subclass, namely that it would only "take a couple of days" to complete a background check.

82.     LYFT made the misrepresentations to Plaintiff LOEWEN and the Driver Subclass without reasonable grounds for believing it to be true.

83.     LYFT communicated the misrepresentations to Plaintiff LOEWEN and the Driver Subclass with the intent to induce Plaintiff LOEWEN and the Driver Subclass to act on them.  Specifically, LYFT made the misrepresentations detailed above with the intent that Plaintiff LOEWEN and the Driver Subclass would take them as true, and therefore referrer new drivers to LYFT.

84.     Plaintiff LOEWEN and the Driver Subclass reasonably and justifiably relied on LYFT's misrepresentation when they referred new drivers to LYFT.

85.     Plaintiff LOEWEN and the Driver Subclass have suffered damages as a result of their actual and justifiable reliance on LYFT's misrepresentations in the amount of $1,000 per referred driver.

86.     Plaintiff LOEWEN and the Driver Subclass are entitled to exemplary and punitive damages for the sake of example and by way of punishing LYFT in an amount

19

to be established at trial.

**EIGHTH CAUSE OF ACTION**
**(Fraud—Negligent Misrepresentation (New Driver Subclass))**
**(Against Defendant LYFT, INC. and DOES 1 through 100)**

87.    Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

88.    LYFT communicated multiple material misrepresentations to Plaintiff WRIGHT and the New Driver Subclass, namely that it would only "take a couple of days" to complete a background check.

89.    LYFT made the misrepresentations to Plaintiff WRIGHT and the New Driver Subclass without reasonable grounds for believing it to be true.

90.    LYFT communicated the misrepresentations to Plaintiff WRIGHT and the New Driver Subclass with the intent to induce Plaintiff WRIGHT and the New Driver Subclass to act on them.   Specifically, LYFT made the misrepresentations detailed above with the intent that Plaintiff WRIGHT and the New Driver Subclass would sign up to become a LYFT driver.

91.    Plaintiff WRIGHT and the New Driver Subclass reasonably and justifiably relied on LYFT's misrepresentation when they signed up to become a LYFT driver and completed their "welcome ride."

92.     Plaintiff WRIGHT and the New Driver Subclass have suffered damages as a result of their actual and justifiable reliance on LYFT's misrepresentations in the amount of $1,000 each.

93.    Plaintiff WRIGHT and the New Driver Subclass are entitled to exemplary and punitive damages for the sake of example and by way of punishing LYFT in an amount to be established at trial.

/ / / /

/ / / /

/ / / /

20

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all other members of the public similarly situated, pray for relief and judgment against LYFT, jointly and severally, as follows:

1.  For an order certifying the proposed class under Federal Rule of Civil Procedure 23;

2.  That Plaintiffs be appointed as the representatives of the class and respective subclasses;

3.  That counsel for Plaintiffs' attorneys be appointed as class counsel;

4.  That LYFT provide to class counsel, immediately upon its appointment the names and most current contact information (addresses and telephone numbers) of all the putative class members;

5.  For actual, consequential, and incidental losses and damages, according to proof;

6.  For prejudgment interest;

7.  For exemplary and punitive damages; and

8.  For such other and further relief as the court may deem just and proper.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of the members of the public similarly situated, hereby demand a trial by a jury.

Date: March 11, 2015            **R. REX PARRIS LAW FIRM**


By: ___*/s/ John M. Bickford*_____
     John M. Bickford, Esq.
     Attorneys for Plaintiff and the
     Putative Class

21