CALDWELL LESLIE & PROCTOR, PC
CHRISTOPHER G. CALDWELL, State Bar No. 106790
  *caldwell@caldwell-leslie.com*
MICHAEL D. ROTH, State Bar No. 217464
  *roth@caldwell-leslie.com*
ALBERT GIANG, State Bar No. 224332
  *giang@caldwell-leslie.com*
CAMERON J. JOHNSON, State Bar No. 266729
  *cjohnson@caldwell-leslie.com*
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendant LYFT, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| CASEY LOEWEN and JONATHAN WRIGHT, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LYFT, INC. a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No. 15-CV-01159-EDL<br><br>**DECLARATION OF SEBASTIAN BRANNSTROM IN SUPPORT OF DEFENDANT LYFT INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS ACTION**<br><br>[Defendant Lyft Inc.'s Notice of Motion and Motion to Compel Individual Arbitration and Dismiss Action; Memorandum of Points and Authorities; Declaration of Eric Burdullis; and [Proposed] Order filed concurrently herewith]<br><br>Date:    June 9, 2015<br>Time:    9:00 a.m.<br>Crtrm.:  E<br><br>Magistrate Judge Elizabeth D. Laporte<br><br>Trial Date:        None Set |

CALDWELL LESLIE & PROCTOR

Case No. 15-CV-01159-EDL
DECLARATION OF SEBASTIAN BRANNSTROM IN SUPPORT OF DEFENDANT LYFT INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS ACTION

# DECLARATION OF SEBASTIAN BRANNSTROM IN SUPPORT OF DEFENDANT LYFT, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS ACTION

I, SEBASTIAN BRANNSTROM, declare as follows:

1. I have been employed by Lyft, Inc. ("Lyft") since June 2011, as an Engineering Manager in Lyft's Engineering Department. I submit this declaration in support of Lyft's Motion to Compel Individual Arbitration and Dismiss Action. Because of my history with the company and my current role as an Engineering Manager, I am familiar with Lyft's platform and mobile-phone application, including the user sign-up process, the driver application process, and the Terms of Service. I have personal knowledge of the facts stated herein and would and could testify competently thereto if called as a witness in this matter.

*Lyft's Platform and App*

2. Lyft is a mobile-based ridesharing platform (the "Lyft Platform") that enables persons who seek transportation to certain destinations ("Riders") to be matched with persons driving to or through those destinations ("Drivers"). Using its mobile-phone application, called the "Lyft App," Lyft offers information and a method to connect drivers and riders with each other but does not provide transportation services. When in need of a ride, riders open the Lyft App on their mobile phone, and use the Lyft Platform to request a ride from a nearby driver. Nearby drivers are then informed of the request, and the first driver to accept the request is matched with the rider and proceeds to pick up and transport the rider to his or her desired destination.

3. The Lyft Platform uses the Internet to transmit the requests from riders to drivers, and all transactions are processed electronically. Lyft's service is available in almost thirty states, including Arizona, California, Colorado, Florida, Georgia, New York, Washington, Texas, and Tennessee.

*Users Consent to Terms of Service Before Using the Lyft Platform*

4. As an Engineering Manager for Lyft, I am familiar with the process by which riders and drivers access and interface with the Lyft Platform. Before gaining access to the Lyft Platform, Lyft requires users—both riders and drivers—to first download the Lyft App and complete the

CALDWELL LESLIE & PROCTOR

-1- Case No. 15-CV-01159-EDL
DECLARATION OF SEBASTIAN BRANNSTROM IN SUPPORT OF
DEFENDANT LYFT INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS ACTION

1  registration process, which includes creating a security-code-protected profile and reviewing and
2  electronically accepting Lyft's Terms of Service Agreement.
3       5.      Lyft's Terms of Service Agreement describes the terms and conditions on which Lyft
4  offers access to Lyft's Platform.  Included within Lyft's Terms of Service Agreement is an arbitration
5  provision requiring mutual arbitration of all disputes and legal claims between the parties.
6       6.      During the registration process when a user downloads and attempts to use the Lyft
7  App, the user is presented with a screen which displays the text of Lyft's Terms of Service:

[Screenshot of Lyft Terms of Service screen on mobile device, dated December 22, 2014, with an "I accept" button]

16  The user has the opportunity to scroll all the way through the text.  The user must click "I accept," and
17  agree and accept all of the terms and conditions contained in the Terms of Service, in order to proceed
18  to use the Lyft App.  Users cannot complete the registration process and access the Lyft Platform if
19  they choose to decline the Terms of Service Agreement.  While users have the option to apply (or not
20  apply) to become a driver through the Lyft App, they cannot become a driver without first
21  downloading the Lyft App and consenting to the Terms of Service.
22      7.      In the normal course of its business, Lyft maintains information regarding when and
23  how its users register for and access the Lyft Platform.  As an Engineering Manager, I have access to
24  this registration information, and I am familiar with this information and the manner in which it is
25  recorded and maintained.  When a user electronically accepts Lyft's Terms of Service Agreement by
26  clicking "I accept" in the Lyft App, that information is sent to Lyft's server, which automatically
27  records the timestamp of the user's agreement to the Terms of Service in the Lyft App.  This
28

CALDWELL
LESLIE &
PROCTOR

-2-                                    Case No. 15-CV-01159-EDL
DECLARATION OF SEBASTIAN BRANNSTROM IN SUPPORT OF
DEFENDANT LYFT INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS ACTION

timestamp is automatically recorded once in the system, and nothing in the system changes the timestamp that is recorded.

*Plaintiff Casey Loewen*

8. Plaintiff Casey Loewen successfully created a security code-protected profile and electronically accepted Lyft's Terms of Service Agreement. I reviewed Lyft's records and was able to confirm that Plaintiff Casey Loewen electronically accepted the Terms of Service Agreement through the Lyft App on July 6, 2013 at 12:49 p.m. PST. Attached hereto as **Exhibit _1_** is a true and correct excerpt of the electronic records showing that Plaintiff Casey Loewen clicked the "I accept" button through the Lyft App on July 6, 2013 at 12:49 p.m. PST, signifying his agreement to be bound by the Terms of Service Agreement.

9. The version of the Terms of Service in effect on July 6, 2013 was the April 30, 2013 Terms of Service. Attached hereto as **Exhibit _2_** is a true and correct copy of Lyft's Terms of Service Agreement that was in effect on July 6, 2013, when Plaintiff Casey Loewen agreed to the Terms of Service Agreement ("2013 TOS"). Casey Loewen has continued to use the Lyft App since that time pursuant to the Terms of Service.

10. My understanding is that, as part of this lawsuit, Plaintiff Casey Loewen alleges that he referred Lauren Turton to apply to become a driver, and that Lauren Turton applied on February 26, 2015. I reviewed the registration records and confirmed that Lauren Turton applied to be a driver through the Lyft App and accepted Lyft's Terms of Service Agreement.

*Plaintiff Jonathan Wright*

11. In addition to being able to apply through the Lyft App, individuals wishing to become Lyft drivers can apply through Lyft's website. In order to apply via the website, prospective drivers must navigate to the "Drive" page and then fill out a form with basic information including their name, email address, city, phone number, and any referral code they wish to use. On that initial webpage, prospective drivers must then check a box that states "I agree to the Lyft terms." Unlike the other grey words surrounding it, the words "Lyft terms" are in pink. The phrase "Lyft terms" is a hyperlink that leads to a website containing the terms of Lyft's Terms of Service Agreement. Once they check the "I agree to the Lyft terms" box, prospective drivers can submit their application by

CALDWELL LESLIE & PROCTOR

-3-   Case No. 15-CV-01159-EDL

DECLARATION OF SEBASTIAN BRANNSTROM IN SUPPORT OF DEFENDANT LYFT INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS ACTION

1 hitting the "BECOME A DRIVER" button. Prospective drivers cannot continue past the initial 2 webpage or click the "BECOME A DRIVER" button without agreeing to Lyft's Terms of Service 3 Agreement.

**Apply Now**

Enter your info, and then download the Lyft app to create your driver profile.

[First name]
[Last name]
[Email address]
[City]
[Phone number]
[Referral Code (optional)]

☐ I agree to the Lyft terms

**BECOME A DRIVER**

Already applied? Check the status of your application here.

14 In addition, if prospective drivers applying on the website have not already downloaded the Lyft App 15 itself, they are required to download the Lyft App and consent to the Terms of Service before they can 16 access the Lyft App and use the Lyft Platform as a driver.

17   12.   When a prospective driver electronically accepts Lyft's Terms of Service agreement by 18 checking the "I agree to the Lyft terms" box and hitting the "BECOME A DRIVER" button on the 19 website, that information is sent to Lyft's server, which automatically records the timestamp of the 20 prospective driver's agreement to the Terms of Service on the website. This timestamp is 21 automatically recorded once in Lyft's driver applicant tracking records, and nothing in the system 22 changes the timestamp that is recorded.

23   13.   Plaintiff Jonathan Wright successfully created a security code-protected profile and 24 electronically accepted Lyft's Terms of Service Agreement. I reviewed the registration records and 25 was able to confirm that Plaintiff Jonathan Wright agreed to Lyft's Terms of Service twice on 26 February 27, 2015.

27   14.   I reviewed Lyft's records and was able to confirm that Plaintiff Jonathan Wright 28 electronically accepted the Terms of Service Agreement through the Lyft website on February 27,

CALDWELL LESLIE & PROCTOR

-4-   Case No. 15-CV-01159-EDL
DECLARATION OF SEBASTIAN BRANNSTROM IN SUPPORT OF DEFENDANT LYFT INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS ACTION

2015 at 8:36 a.m. PST. In Lyft's driver applicant tracking records, I ran a query for Plaintiff Jonathan Wright's first and last name, profile identification ("user_id"), and timestamp corresponding to when he clicked the "I agree to the Lyft terms" box on the Lyft website ("web_applied_at"). Below is a true and correct screenshot of the electronic records of my query in Lyft's driver applicant training records, which shows that Plaintiff Jonathan Wright clicked the "I agree to the Lyft terms" box on the Lyft website on February, 27, 2015 at 16:36:23 UTC (or 8:36 a.m. PST), signifying his agreement to be bound by the Terms of Service Agreement.

```
first_name | last_name |      user_id       |      web_applied_at
-----------+-----------+--------------------+----------------------------
Jonathan   | Wright    | 699010648281430018 | 2015-02-27 16:36:23.971126
```

15. Plaintiff Jonathan Wright also electronically accepted the Terms of Service Agreement through the Lyft App on February 27, 2015 at 8:47 a.m. PST. Attached hereto as **Exhibit _3_** is a true and correct excerpt of the electronic records showing that Plaintiff Jonathan Wright clicked the "I accept" button through the Lyft app on February 27, 2015 at 8:47 a.m. PST, again signifying his agreement to be bound by the Terms of Service Agreement.

16. The version of the Terms of Service in effect on February 27, 2015 was the December 22, 2014 Terms of Service. Attached hereto as **Exhibit _4_** is a true and correct copy of Lyft's Terms of Service Agreement that was in effect on February 27, 2015, when Plaintiff Jonathan Wright twice agreed to the Terms of Service Agreement ("2014 TOS").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed April 17, 2015, at San Francisco, California.

_____
SEBASTIAN BRANNSTROM

CALDWELL LESLIE & PROCTOR

-5-     Case No. 15-CV-01159-EDL
DECLARATION OF SEBASTIAN BRANNSTROM IN SUPPORT OF
DEFENDANT LYFT INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS ACTION