UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY LOEWEN, et al.,<br><br>     Plaintiffs,<br><br>     v.<br><br>LYFT, INC.,<br><br>     Defendant. | Case No.  15-cv-01159-EDL<br><br>**ORDER DENYING MOTION TO COMPEL DISCOVERY** |

## Introduction

This is a putative class action brought by Plaintiffs Casey Loewen and Jonathan Wright individually and on behalf of others similarly situated against Defendant Lyft, Inc. Defendant has filed a motion to compel arbitration and dismiss the litigation, which is set to be heard on July 7, 2015. In the interim, Plaintiffs filed this "Motion to Compel Limited Discovery on the Enforceability of Lyft's Arbitration Agreements" to obtain information they contend is needed to oppose the pending motion to compel arbitration. The Court held oral argument on June 9, 2015. For reasons stated during the hearing and as follows, Plaintiffs' motion is DENIED.

## Background

The Complaint alleges that Lyft is a San Francisco-based transportation network company that facilitates peer-to-peer ridesharing through its mobile-phone application by connecting passengers who need a ride to drivers who have a car. Compl. ¶ 11. In order to become a Lyft driver, new applicants need to fill out an application, take a "welcome ride," and pass a background check, in that order. Id. ¶ 12. The application asks for personal and automobile information. Id. The welcome ride consists of meeting with a Lyft mentor, a vehicle inspection, and a practice ride. Id. The background check examines the applicant's driving record and criminal history. Id. Parts of the background check are conducted by Lyft while others are

conducted by third-party vendors. Id. Once a driver is approved, he or she may immediately begin giving rides. Id.

According to Lyft, in order to become a driver through its website or use its services as either a driver or a rider through its "app," users must also agree to Lyft's Terms of Service ("TOS"). Dkt. # 15 (Brannstrom Decl.) ¶ 4, 6, 11, Ex. 2. Lyft states that Plaintiff Loewen agreed to the TOS through the Lyft app on July 6, 2013, while the 2013 TOS was in effect. Id. ¶ 8-9, Ex. 1-2. According to Defendant, Plaintiff Wright agreed to the TOS on both the website and the app on February 27, 2015, while the 2014 TOS was in effect. Id. ¶ 14-16, Exs. 2-4. Both the 2013 and 2014 TOS contain arbitration provisions, though they differ in scope. Id. Ex. 2 at 12-13 (2013 TOS arbitration provision covers "any legal disputes or claims between the Parties"); Ex. 4 at 22 (2014 TOS arbitration provision covers "any legal disputes or claims arising out of or related to the Agreement").

On or about February 25, 2015, Lyft launched two $1,000 new driver referral programs (the "Promotions") in fifteen cities across the county. Compl. ¶ 13. The first was the "$1,000 Double-Sided Referral Bonus," whereby current Lyft drivers could refer new drivers, and both the referring driver and the new driver would each receive $1,000 provided that the new driver: (1) applied on or after midnight on February 25th; (2) entered his or her referrer's code on signup; and (3) completed his or her first ride on or before March 5th. Compl. ¶ 14. The second was the "1,000 Sign-On Bonus," which essentially allowed new drivers to sign up directly without the need of being referred. Id. ¶ 16. To qualify, a new driver had to: (1) apply on or after midnight on February 25th; (2) enter a code upon signup; and (3) complete his or her first ride on or before March 5th. Id. Although new drivers did not have trouble filling out their applications, inputting the appropriate promotion codes, and completing their "welcome rides," Plaintiffs allege that Lyft and its third-party vendors did not process background checks fast enough to ensure that the new drivers would be able to give their first ride by March 5th. Id. According to Plaintiffs, despite the fact that Lyft originally stated that it would only take a "couple days" to approve a background check, many new drivers were told by Lyft and its third-party vendors that it could take at least one to two weeks to process their background checks. Id. As a result, some new drivers were

1   unable to give their first ride by March 5th, causing them and their referring drivers to not receive
2   $1,000.  See id. ¶¶ 22, 29, 34.
3   　　　　　On March 11, 2015, Plaintiffs Casey Loewen and Jonathan Wright filed this class action
4   against Lyft asserting claims for breach of contract, fraud, and negligent misrepresentation.  See
5   Compl. ¶¶ 40–93.  On April 17th, 2015, Lyft responded by filing a Motion to Compel Individual
6   Arbitration, arguing that "[i]n order to qualify for [either of the Promotions], both new and
7   existing drivers were required to have consented to Lyft's Terms of Service, and every version of
8   those Terms contain a mandatory arbitration provision." Dkt. #14 at 1.  Lyft claims that Loewen
9   agreed to its 2013 TOS, which contain "a mandatory arbitration provision that requires the parties
10  to submit 'any legal disputes or claims between the Parties' to binding arbitration." Id.  Further,
11  Lyft asserts that under the 2013 TOS, "questions of arbitrability are reserved for the Court," and
12  Loewen is "required to arbitrate his claims against Lyft on an individual, not a classwide, basis"
13  because the agreement is "silent on the availability of class arbitration." Id.  Lyft claims that
14  Wright agreed to its 2014 TOS, which also contains a mandatory arbitration provision. Id. at 2.
15  The 2014 TOS covers "any legal disputes or claims arising out of or related to [the 2014 TOS],"
16  delegates questions of arbitrability to the arbitrator, and includes an express class action waiver.
17  Id.
18  　　　　　Plaintiffs requested early discovery that they contend relates to the enforceability of the
19  asserted arbitration agreements and is necessary to respond to Defendant's motion to compel
20  arbitration.  See generally Bickford Decl., Ex. B at 1.  Defendant refused to provide this discovery
21  on the basis that "[n]one of the categories of information requested . . . are necessary or relevant to
22  the resolution of the Motion to Compel Individual Arbitration." Id. Ex. C at 2; see also generally
23  Johnson Decl. ¶ 2-11.  After a telephonic meet and confer, the parties agreed to brief their
24  discovery dispute for the Court prior to completing briefing on the motion to compel arbitration.
25  The parties stipulated to have this motion to compel heard on shortened time, and to forego a reply
26  brief.  See Dkt. # 18.
27  **Legal Standard**
28

The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (quoting 9 U.S.C. § 2). The FAA thus makes clear that "courts must place arbitration agreements on an equal footing with other contracts." Id. Generally applicable contract defenses are applicable to arbitration agreements as they are to other contracts. Id. at 1746 (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).

In deciding whether a dispute is arbitrable, courts must consider: (1) whether a valid agreement to arbitrate exists; and (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000). If a party seeking to compel arbitration establishes these two factors, the court must compel arbitration. Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original). When a contract contains an arbitration clause, there is a presumption of arbitrability such that doubts should be resolved in favor of coverage. AT&T Techs. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). This presumption is particularly strong in the case of broad arbitration clauses. Id. Where a contract delegates the question of arbitrability to an arbitrator, the court's inquiry is limited to whether the demand for arbitration is "wholly groundless." Clarium Capital Management LLC v. Choudhury, 2009 WL 331588, at *5 (N.D.Cal. Feb. 11, 2009).

Furthermore, the FAA "calls for a summary and speedy disposition of motions or petitions to enforce arbitration clauses." Moses H. Cone Mem'l Hosp., 460 U.S. 1, 29 (1983). Section 4 of the Federal Arbitration Act ("FAA") provides that:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect,

4

or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4; see also Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 726 (9th Cir. 1999). Thus, the FAA provides for discovery and a trial in connection with a motion to compel arbitration *only if* "the making and performance of the agreement to arbitrate be in issue." Simula, 175 F.3d at 726 (affirming denial of pre-arbitration discovery because claims of fraudulent inducement and duress relating to contract formation generally were questions for the arbitrator); see also Meyer v. T-Mobile USA Inc., 836 F. Supp. 2d 994, 1007 (N.D. Cal. 2011) (holding that pre-arbitration discovery into unconscionability is allowed under the FAA, but denying discovery beyond the contracts containing the arbitration provisions at issue, which were already available to the parties and the court); Hodsdon v. DirecTV, LLC, 2012 WL 5464615, at *8 (N.D.Cal. Nov. 8, 2012) (no discovery ordered because it would not provide information necessary for court to determine question of unconscionability); McArdle v. AT&T Mobility LLC, 2013 WL 1190277, at *2 (N.D.Cal. Mar. 21, 2013) (same); Advocat Inc. v. Blanchard, 2012 WL 1893735, at *5 (E.D.Ark. May 24, 2014) (collecting cases).

**Discussion**

Plaintiffs argue that in order to respond to Lyft's pending motion to compel arbitration, they require discovery of (1) all versions of Lyft's terms of service; (2) documents reflecting reasons why changes were made to all versions of Lyft's terms of service; (3) a Rule 30(b)(6) deposition on all versions of the terms of service and how Lyft communicates these changes; and (4) the deposition of Sebastian Brannstrom. Plaintiff is not entitled to any of this discovery prior to the Court's ruling on Lyft's pending motion to compel arbitration.

First, Plaintiffs argue that they are entitled to pre-arbitration discovery because it is questionable why Lyft asserts that Loewen is subject to the 2013 TOS while Wright is subject to the 2014 TOS, given that the 2013 TOS could, by its own terms, be amended simply by posting amended terms on Lyft's Platform. See Brannstrom Decl. Ex. 2 (2013 TOS) at 2; see also id. at Ex. 4 (2014 TOS) at 2 (same). Plaintiffs state that "a reasonable argument can be made that Loewen would be bound to (if anything) the updated 2014 TOS, not the 2013 TOS" and seek discovery to investigate the validity of this argument. Motion at 5. They contend that under

5

1    Federal Rule of Civil Procedure 26(b)(2), they are entitled to any non-privileged matter relevant to
2    Defendant's assertion that Loewen is bound by the 2013 TOS, including information about how
3    Lyft drivers initially agree to TOS, how Lyft updates its TOS and communicates updates, and all
4    versions of the TOS.

5    Both the 2013 TOS and 2014 TOS contain broad arbitration provisions, so it is not
6    necessary to determine which one applies to Loewen in order to resolve the motion to compel
7    arbitration.  Indeed, during oral argument, Lyft agreed that it is willing to rely on either the 2013
8    or 2014 TOS for purposes of its pending motion to compel arbitration, making discovery into the
9    question of which one applies to Loewen irrelevant.  Further, even if Loewen wants to make an
10   argument that the 2014 TOS applies to him, the discovery sought from Lyft is not necessary for
11   this purpose.  Whether Loewen is bound by the updated 2014 TOS rather than the 2013 TOS
12   depends on whether he received proper notice of the amendment, which is within his own personal
13   knowledge.  Finally, the extremely broad discovery sought is not even directed to the question of
14   whether Loewen received proper notice of the 2014 TOS.  Therefore, no discovery is necessary to
15   support Plaintiffs' potential argument that the 2014 TOS, as opposed to the 2013 TOS, applies to
16   Loewen.

17   Second, Plaintiffs argue that in order to rule on Defendant's motion to compel arbitration,
18   the Court must determine whether the parties "clearly and unmistakably" agreed to delegate the
19   question of arbitrability to the arbitrator.  See First Options of Chicago, Inc. v. Kaplan, 514 U.S.
20   938, 944 (1995) (courts should not assume that the parties agreed to arbitrate arbitrability unless
21   there is clear and unmistakable evidence that they did so).  Plaintiffs contend that, even if there is a
22   clear and unmistaken agreement to delegate arbitrability to the arbitrator in the 2014 TOS (which
23   it appears that there is), they need discovery in order to determine whether to argue that it is
24   "wholly groundless" for Lyft to claim that the 2014 TOS encompasses the claims at issue here.
25   See Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1373 (Fed. Cir. 2006) (applying California
26   law and holding that where agreement shows the "parties' clear and unmistakable intent to
27   delegate arbitrability decisions to an arbitrator, the next inquiry is whether [the defendant's]
28   assertions of arbitrability are 'wholly groundless'").  In support of this argument, Plaintiffs

6

contend that amendments to the TOS can be used to interpret the parties' intent, and in light of the difference in language between the 2013 TOS and 2014 TOS, an argument can be made that Lyft intentionally narrowed the scope of the arbitration provision in the 2014 TOS in order to limit arbitrability to those claims clearly arising out of the 2014 TOS. However, whether or not it is "wholly groundless" for Lyft to argue that Plaintiff's claims are covered by the 2014 TOS depends entirely on the scope of the arbitration provision contained therein, so only the 2014 TOS itself is necessary to resolve this question. Additionally, given the broad scope of the 2014 TOS arbitration provision, it is not "wholly groundless" for Lyft to contend that it covers Plaintiffs claims here, and no discovery is needed to show otherwise.

Further, the scope of the 2014 TOS arbitration provision is not ambiguous (and Plaintiffs have not argued to the contrary), so no extrinsic evidence is admissible to explain its meaning. Additionally, the discovery sought by Plaintiffs relates to Lyft's internal discussions and interpretation of the scope of the arbitration provision, which is irrelevant to interpreting the meaning of the arbitration scope provision in the 2014 TOS, even if that term were deemed ambiguous, because the internal discussions and interpretations were not communicated to Plaintiff so they are not reflective of the parties' intent. See Shaw v. Regents of Univ. of Calif., 58 Cal. App. 4th 44, 54-55 (1997) ("Although the intent of the parties determines the meaning of the contract (Civ. Code, §§ 1636, 1638), the relevant intent is 'objective' - that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent.").

Plaintiffs also point out that after this lawsuit was filed, Lyft issued a "Lyft Referral Program Terms of Service" (hereinafter "Referral TOS") that now appears on Lyft's website and governs participation in the Driver Referral Program. Bickford Decl. ¶ 5, Ex. D (Referral TOS). The Referral TOS contains an arbitration provision governing "any legal disputes or claims arising out of or relating to the [Referral TOS]." Id. at 5 of 6. Plaintiffs argue that the issuance of the Referral TOS supports their position that it is wholly groundless for Lyft to argue that the 2014 TOS governs Plaintiffs' claims. However, neither Lyft nor Plaintiffs have argued that the Referral TOS applies to Plaintiff's claims (and there is no evidence that Plaintiffs themselves have even seen the Referral TOS, only that their attorney has reviewed it), and the Referral TOS is irrelevant

1    to interpreting the parties' intent with respect to the scope of the 2014 TOS arbitration provision.

2         Lyft also points out that even if the Referral TOS applied to the Promotions at issue in this

3    litigation (a fact it does not concede), claims arising from one agreement may be subject to an

4    arbitration agreement in another agreement.  See, e.g., Athena Feminine Techs., Inc. v. Wilkes,

5    2011 WL 4079927, at *12 (N.D.Cal. Sept. 13, 2011) (quoting Simula, 175 F.3d at 721) ("Claims

6    arising from one agreement may be subject to an arbitration agreement contained in another

7    agreement. . . . To require arbitration, [a party's] factual allegations need only 'touch matters'

8    covered by the contract containing the arbitration clause and all doubts are to be resolved in favor

9    of arbitrability.") (internal citations and quotations omitted).  In any case, the Referral TOS

10   contains an arbitration provision almost identical to the one in the 2014 TOS, so it does not appear

11   to matter whether the Referral TOS governs Plaintiff's claims for purposes of Lyft's motion to

12   compel arbitration,.  See Bickford Decl. Ex. D ¶13.  For all of these reasons, no discovery is

13   needed into whether it is wholly groundless for Lyft to claim that one or the other TOS applies.

14        Third, Plaintiffs argue briefly and without explanation that pre-arbitration discovery is

15   needed to determine whether the arbitration agreements are unconscionable.  They contend that

16   the deposition of Sebastien Brannstrom and a 30(b)(6) deposition may produce facts relevant to

17   procedural unconscionability, while documents relating to versions of the TOS may be relevant to

18   substantive unconscionability.  However, Plaintiffs do not explain why they think any portion of

19   the TOS is unconscionable or how this discovery will support such an argument.  Without more

20   explanation, and in light of the fact that the parties and the Court are already in possession of the

21   relevant agreements, Plaintiffs are not entitled to discovery on unconscionability.  See, e.g.,

22   McArdle, 2013 WL 1190277, at *3; Hodsdon, 2012 WL 5464615, at *8; Meyer, 836 F. Supp. 2d

23   at 1007-07.

24        Finally, it is important to note that Plaintiffs have not contested their assent to the

25   applicable TOS because they have not filed any declarations relating to the conditions under which

26   they did or did not agree to the applicable arbitration agreements that contradict Mr. Brannstrom's

27   declaration about Plaintiffs' assent to the TOS.  In Blau v. AT&T Mobility, 2012 WL 10546, at *3

28   (N.D.Cal. Jan. 3, 2012) (internal quotations and citations omitted), the court explained that a party

8

seeking to invoke the FAA "must make a prima facie showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement in issue" and then the opposing party must "unequivocally deny" the agreement.  In Blau, the court held that a plaintiff's claim that he did not recall seeing an arbitration provision did not rise to the level of an unequivocal denial to put the agreement in issue, and therefore denied discovery into the making of the applicable arbitration agreements.  Id. at *4; see also Fontaine v. Rent-A-Center West, Inc., 2006 WL 141606, at *2 (D. Or. Jan. 13, 2006) (no discovery on contract formation prior to motion to compel arbitration because plaintiff was necessarily aware of circumstances of contract execution but failed to file a declaration).   Here, Plaintiffs have not unequivocally denied their assent to the TOS.  Therefore they are not entitled to discovery into the making of the arbitration agreements to the extent that they seek any such information.

For all of the foregoing reasons, Plaintiffs' motion is DENIED.

**IT IS SO ORDERED.**

Dated:  June 12, 2015


ELIZABETH D. LAPORTE
United States Magistrate Judge

9