UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY LOEWEN, et al., | Case No.  15-cv-01159-EDL |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO COMPEL ARBITRATION AND DISMISS ACTION; DENYING MOTION TO STRIKE SUR-REPLY; GRANTING MOTION TO FILE STATEMENT OF RECENT DECISION** |
| LYFT, INC., | |
| Defendant. | |

## I.      Introduction

This is a putative class action brought by Plaintiffs Casey Loewen and Jonathan Wright individually and on behalf of others similarly situated against Defendant Lyft, Inc.  This Court has previously denied Plaintiff's motion to compel pre-arbitration discovery.   Now before the Court is Defendant's motion to compel arbitration and dismiss the litigation.  The Court heard oral argument on the motion on July 7, 2015.  For the following reasons, the motion is GRANTED.

## II.     Background

Lyft is a San Francisco-based transportation network company that facilitates peer-to-peer ridesharing through its mobile-phone application (the "Lyft App") by connecting passengers who need a ride to drivers who have a car. Compl. ¶ 11. In order to become a Lyft driver, new applicants need to fill out an application, take a "welcome ride," and pass a background check, in that order.  Id.¶ 12.  The application asks for personal and automobile information.  Id.  The welcome ride consists of meeting with a Lyft mentor, a vehicle inspection, and a practice ride.  Id.  The background check examines the applicant's driving record and criminal history.  Id.  Parts of the background check are conducted by Lyft while others are conducted by third-party vendors.  Id.  Once a driver is approved, he or she may immediately begin giving rides.  Id.

United States District Court
Northern District of California

In order to use the Lyft App, whether as a rider or a driver, users must agree to Lyft's Terms of Service ("TOS").  Brannstrom Decl. ¶ 4, Exh. 2.  When a user downloads and attempts to use the Lyft App for the first time, the user is presented with a screen that displays the text of Lyft's TOS.  Id. ¶ 6.  The user has the opportunity to scroll all the way through the text.  Id.  The user must click "I accept," and agree to the TOS, in order to proceed to use the Lyft App.  Id. While users can apply to become a driver through the Lyft App, they cannot become a driver without first downloading the Lyft App and consenting to the TOS. Id.  Individuals can also apply to become Lyft drivers through Lyft's website. Id. ¶ 11. In order to apply via the website, users must access the "Drive" page and then fill out a form with basic information including their name, email address, city, phone number, and any applicable referral code.  Id. ¶ 11.  On the initial webpage, there is a checkbox that states "I agree to the Lyft terms."  Id.  "Lyft terms" is a hyperlink that leads to a website containing the TOS.  Id.  Only after the "I agree" box has been checked can prospective drivers submit their application by selecting the "BECOME A DRIVER" button.  Id.  If these prospective drivers have not already downloaded the Lyft App, they are required to download the Lyft App and consent to the TOS before they can access the Lyft App and use the Lyft Platform as a driver.  Id.

Plaintiff Loewen initially agreed to the TOS through the Lyft app on July 6, 2013, while the 2013 version of the TOS was in effect.  Id. ¶ 8-9, Ex. 1-2.  Plaintiff Wright agreed to the TOS on both the website and the app on February 27, 2015, while the 2014 version of the TOS was in effect.  Id. ¶ 14-16, Exs. 2-4.  Both the 2013 and 2014 TOS advise users that in order to "register for the services provided on Lyft," they must "agree to be bound by the terms and conditions of [the] agreement."  Id. Exh. 4 at 2; see also id., Exh. 2 at 1-2 (stating that users must accept the Terms of Service "before . . . us[ing] any of the Services").  Both the 2013 TOS and 2014 TOS contain arbitration provisions, though they differ in how they define their scope.  Id. Ex. 2 at 12-13 (2013 TOS arbitration provision covers "any legal disputes or claims between the Parties," provides that questions of arbitrability are reserved for the Court, and is silent on the availability of class arbitration); Ex. 4 at 22 (2014 TOS arbitration provision covers "any legal disputes or claims arising out of or related to the Agreement," delegates questions of arbitrability to the

United States District Court
Northern District of California

1   arbitrator, and includes an express class action waiver).  Id.  Though Lyft made separate

2   arguments with respect to each named Plaintiff based on the differing terms of the 2013 and 2014

3   TOS in its moving papers, as set forth in their subsequent papers and confirmed at oral argument,

4   the parties agree that for purposes of this motion the 2014 TOS applies to both Plaintiffs.  See

5   Opp. at 4 ("Loewen is bound by the 2014 TOS, not the 2013 TOS").  Therefore, the Court only

6   addresses the 2014 TOS.

7        The 2014 TOS contains the following arbitration agreement:

8        **Agreement to Arbitrate All Disputes and Legal Claims**
         You and We agree that any legal disputes or claims arising out of or related to the
9        Agreement (including but not limited to the use of the Lyft Platform and/or the
         Services, or the interpretation, enforceability, revocability, or validity of the
10       Agreement, or the arbitrability of any dispute), that cannot be resolved informally
         shall be submitted to binding arbitration in the state in which the Agreement was
11       performed. The arbitration shall be conducted by the American Arbitration
         Association under its Commercial Arbitration Rules (a copy of which can be
12       obtained here), or as otherwise mutually agreed by you and we. Any judgment on
         the award rendered by the arbitrator may be entered in any court having jurisdiction
13       thereof. Claims shall be brought within the time required by applicable law. You
         and we agree that any claim, action or proceeding arising out of or related to the
14       Agreement must be brought in your individual capacity, and not as a plaintiff or
         class member in any purported class, collective, or representative proceeding. The
15       arbitrator may not consolidate more than one person's claims, and may not
         otherwise preside over any form of a representative, collective, or class proceeding.
16       YOU ACKNOWLEDGE AND AGREE THAT YOU AND LYFT ARE EACH
         WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A
17       PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR
         REPRESENTATIVE PROCEEDING.

18

19   Id. Exh. 4 at 22.  The 2014 also provides that: "We may amend this Agreement at any time by

20   posting the amended terms on the Lyft Platform.  If We post amended terms on the Lyft Platform,

21   You may not use the services without accepting them. Except as stated below, all amended terms

22   shall automatically be effective after they are posted on the Lyft Platform."  Id. at 2.

23        On or about February 25, 2015, Lyft launched two $1,000 new driver referral programs

24   (the "Promotions") in fifteen cities across the county.  Compl.¶ 13.  The first was the "$1,000

25   Double-Sided Referral Bonus," whereby a current Lyft driver could refer new drivers, and the

26   referring driver and the new driver would each receive $1,000 provided that the new driver: (1)

27   applied on or after midnight on February 25th; (2) entered his or her referrer's code on signup; and

28   (3) completed his or her first ride on or before March 5th.  Id. ¶ 14. The second was the "$1,000

3

Sign-On Bonus," which essentially allowed new drivers to sign up directly without the need of being referred.  Id. ¶ 16. To qualify, a new driver had to: (1) apply on or after midnight on February 25th; (2) enter a code upon signup; and (3) complete his or her first ride on or before March 5th.  Id.  Although new drivers did not have trouble filling out their applications, inputting the appropriate promotion codes, and completing their "welcome rides," Plaintiffs allege that Lyft and its third-party vendors did not process background checks fast enough to ensure that the new drivers would be able to give their first ride by March 5th.  Id.  According to Plaintiffs, despite the fact that Lyft originally stated that it would only take a "couple days" to approve a background check, many new drivers were told by Lyft and its third-party vendors that it could take at least one to two weeks to process their background checks.  Id.  As a result, some new drivers were unable to give their first ride by March 5th, causing them and their referring drivers to forfeit the $1,000 bonus.  See id. ¶¶ 22, 29, 34.

On March 11, 2015, Plaintiffs Casey Loewen and Jonathan Wright filed this putative class action against Lyft asserting claims for breach of contract, fraud, and negligent misrepresentation.  See Compl. ¶¶ 40–93.  On April 17th, 2015, Lyft responded by filing this Motion to Compel Individual Arbitration and Dismiss the Action.  Dkt. #14.

## III.    Legal Standard

The Federal Arbitration Act ("FAA") provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (quoting 9 U.S.C. § 2).  The FAA thus makes clear that "courts must place arbitration agreements on an equal footing with other contracts."  Id.  In deciding whether a dispute is arbitrable, courts must consider: (1) whether a valid agreement to arbitrate exists; and (2) whether the scope of that agreement to arbitrate encompasses the claims at issue.  Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000).  If a party seeking to compel arbitration establishes these two factors, the court must compel arbitration.  Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of

United States District Court
Northern District of California

1    discretion by a district court, but instead mandates that district courts *shall* direct the parties to

2    proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis

3    in original).  When a contract contains an arbitration clause, there is a presumption of arbitrability

4    such that doubts should be resolved in favor of coverage.  AT&T Techs. v. Commc'ns Workers of

5    Am., 475 U.S. 643, 650 (1986).  This presumption is particularly strong in the case of broad

6    arbitration clauses.  Id.  Where a contract delegates the question of arbitrability to an arbitrator, the

7    court's inquiry is limited to whether the demand for arbitration is "wholly groundless." Clarium

8    Capital Management LLC v. Choudhury, 2009 WL 331588, at *5 (N.D.Cal. Feb. 11, 2009).

9         Despite the strong policy favoring enforcement of arbitration agreements, generally

10   applicable contract defenses such as fraud, duress, or unconscionability are applicable to

11   arbitration agreements as they are to other contracts.  Concepcion, 131 S. Ct. at 1746 (citing

12   Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)).  Under California law, "courts may

13   refuse to enforce any contract found 'to have been unconscionable at the time it was made,' or

14   may 'limit the application of any unconscionable clause.'"  Id. (citing Cal. Civ. Code § 1670.5(a)).

15        Though there are various iterations of the test for unconscionability under California law, it

16   has most recently been explained by the California Supreme Court in Sanchez v. Valencia Holding

17   Co., LLC, 61 Cal. 4th 899, 910-12 (2015)[1] as follows:

18        "'One common formulation of unconscionability is that it refers to "'an absence
         of meaningful choice on the part of one of the parties together with contract terms
19        which are unreasonably favorable to the other party.'" [Citation.] As that
         formulation implicitly recognizes, the doctrine of unconscionability has both a
20        procedural and a substantive element, the former focusing on oppression or
         surprise due to unequal bargaining power, the latter on overly harsh or one-sided
21        results.'" (Sonic II, supra, 57 Cal.4th at p. 1133, 163 Cal.Rptr.3d 269, 311 P.3d
         184.)

22        "'The prevailing view is that [procedural and substantive unconscionability] must
23        both be present in order for a court to exercise its discretion to refuse to enforce a
         contract or clause under the doctrine of unconscionability.'[Citation.] But they
24        need not be present in the same degree. 'Essentially a sliding scale is invoked
         which disregards the regularity of the procedural process of the contract
25        formation, that creates the terms, in proportion to the greater harshness or
         unreasonableness of the substantive terms themselves.'[Citations.] In other words,
26        the more substantively oppressive the contract term, the less evidence of

27   _____

28   [1] Lyft has filed an administrative motion requesting that the Court consider this recent case.  See
     Dkt. No. 34-1. The administrative motion is GRANTED and the Court has considered this case.

procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."(Armendariz v. Foundation Health Psychare Services, Inc. (2000) 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (Armendariz ).) Courts may find a contract as a whole "or any clause of the contrat" to be unconscionable. (Civ .Code, § 1670.5, subd. (a).)

As we stated in Sonic II:"The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ""'overly harsh''" (Stirlen v. Supercuts, Inc. (1997) 51 Cal.App.4th 1519, 1532, 60 Cal.Rptr.2d 138), "'unduly oppressive'" (Perdue v. Crocker National Bank (1985) 38 Cal.3d 913, 925, 216 Cal.Rptr. 345, 702 P.2d 503 (Perdue )), "'so one-sided as to 'shock the conscience''" (Pinnacle Museum Tower Assn. v. Pinnacle Market Development (2012) 55 Cal.4th 223, 246, 145 Cal.Rptr.3d 514, 282 P.3d 1217 (Pinnacle)), or 'unfairly one-sided' (Little [v. Auto Stiegler, Inc. (2003) ] 29 Cal.4th [1064], 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979). All of these formulations point to the central idea that unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' (Schnuerle v. Insight Communications Co. (Ky.2012) 376 S.W.3d 561, 575 (Schnuerle)), but with terms that are 'unreasonably favorable to the more powerful party' (8 Williston on Contracts (4th ed.2010) § 18.10, p. 91). These include 'terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms, or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.'(Ibid.)" (Sonic II, supra, 57 Cal.4th at p. 1145, 163 Cal.Rptr.3d 269, 311 P.3d 184.) Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof. (Id. at p. 1148, 163 Cal.Rptr.3d 269, 311 P.3d 184.)

We further observed in Sonic II, and reaffirm today, that "an examination of the case law does not indicate that 'shock the conscience' is a different standard in practice than other formulations or that it is the one true, authoritative standard for substantive unconscionability, exclusive of all others."(Sonic II, supra, 57 Cal.4th at p. 1159, 163 Cal.Rptr.3d 269, 311 P.3d 184.) Nor do we see any conceptual difference among these formulations. Rather, "courts, including ours, have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness beyond 'a simple old-fashioned bad bargain." ' (Id. at p. 1160, 163 Cal.Rptr.3d 269, 311 P.3d 184, italics added.) This latter qualification is important. Commerce depends on the enforceability, in most instances, of a duly executed written contract. A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain. Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: "overly harsh," "unduly oppressive," "unreasonably favorable." (See Pinnacle, supra, 55 Cal.4th at p. 246, 145 Cal.Rptr.3d 514, 282 P.3d 1217 ["A contract term is not substantively unconscionable when it merely gives one side a greater benefit...."].) We clarify today that these formulations, used throughout our case law, all mean the same thing.

An evaluation of unconscionability is highly dependent on context. (See Williams v. Walker–Thomas Furniture Co. (D.C.Cir.1965) 350 F.2d 445, 450 ["The test is not simple, nor can it be mechanically applied."].) The doctrine often requires inquiry into the "commercial setting, purpose, and effect" of the contract or contract provision. (Civ.Code, § 1670.5, subd. (b); accord, Sonic II, supra, 57

United States District Court
Northern District of California

Cal.4th at pp. 1147–1148, 163 Cal.Rptr.3d 269, 311 P.3d 184; Walker–Thomas Furniture, at p. 450 [unconscionability must "be considered 'in the light of the general commercial background and the commercial needs of the particular trade or case' "].) As we have recognized, " 'a contract can provide a "margin of safety" that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." ' (Armendariz, supra, 24 Cal.4th at p. 117, 99 Cal.Rptr.2d 745, 6 P.3d 669; see Walker–Thomas Furniture, at p. 450 ["where no meaningful choice was exercised upon entering the contract," the test is "whether the terms are 'so extreme as to appear unconscionable according to the mores and business practices of the time and place' "].) And, as noted, the substantive unfairness of the terms must be considered in light of any procedural unconscionability. The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.

Moreover, our unconscionability standard is, as it must be, the same for arbitration and nonarbitration agreements. (Concepcion, supra, 563 U.S. at p. —— – [131 S.Ct. at p. 1747].) Of course, unconscionability can manifest itself in different ways, depending on the contract term at issue. (See, e.g., Washington Mutual Bank v. Superior Court (2001) 24 Cal.4th 906, 916–917, 103 Cal.Rptr.2d 320, 15 P.3d 1071 [choice of law clause] ); City of Santa Barbara v. Superior Court (2007) 41 Cal.4th 747, 777, 62 Cal.Rptr.3d 527, 161 P.3d 1095 [waivers of liability provision] ); Moreno v. Sanchez (2003) 106 Cal.App.4th 1415, 1434, 131 Cal.Rptr.2d 684 [statutes of limitation provision]; Smith, Valentino & Smith, Inc. v. Superior Court (1976) 17 Cal.3d 491, 495–496, 131 Cal.Rptr. 374, 551 P.2d 1206 [forum selection clause].) But the application of unconscionability doctrine to an arbitration clause must proceed from general principles that apply to any contract clause. In particular, the standard for substantive unconscionability—the requisite degree of unfairness beyond merely a bad bargain—must be as rigorous and demanding for arbitration clauses as for any contract clause.

Id. at 910-912.

**IV.     Sur-Reply**

After briefing on this motion was complete but before oral argument, Plaintiff filed an unauthorized sur-reply.  See Dkt. No. 26.  Lyft filed a motion to strike the sur-reply pursuant to Northern District Civil Local Rule 7-3(d) which prohibits any filings after the reply is filed without prior court approval.  Dkt. No. 27.  Plaintiffs did not request the Court's permission to file a sur-reply, or explain why they could not have included these arguments earlier.  Nevertheless, to the extent that it is not repetitive of Plaintiffs' earlier briefing and is helpful to the Court's analysis, the Court has considered the sur-reply.  Therefore, Lyft's motion to strike the sur-reply is DENIED. During oral argument, the Court granted Lyft permission to file a response to the sur-reply and the Court has considered Lyft's response as well.

**V.     Discussion**

United States District Court
Northern District of California

United States District Court
Northern District of California

### A.   The Delegation Clause Is Enforceable

The 2014 TOS expressly provides that: "You and We agree that any legal disputes or claims arising out of or related to the Agreement (including but not limited to the use of the Lyft Platform and/or the Services, or the interpretation, enforceability, revocability, or validity of the Agreement, or the arbitrability of any dispute), that cannot be resolved informally shall be submitted to binding arbitration in the state in which the Agreement was performed." Brannstrom Decl. Exh. 4 (2014 TOS) at 22.

### 1.   Clear and Unmistakable Delegation of Arbitrability

Under federal law, "[t]he question whether parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (internal citations, quotation marks, and modifications omitted). If the parties clearly and unmistakably assign the arbitrability question to the arbitrator, "the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly groundless.'" An arbitration provision that explicitly refers arbitrability questions to an arbitrator is evidence that the parties clearly and unmistakably have referred the arbitrability question to the arbitrator. See, e.g., Anderson v. Pitney Bowes, Inc., 2005 WL 1048700, at *3 (N.D.Cal. May 4, 2005) ("one need not reference extrinsic materials" where an arbitration clause "facially gives an arbitrator the exclusive authority to determine his or her own jurisdiction"). Here, the language of the 2014 TOS itself reveals the parties' clear and unmistakable intent to delegate the threshold question of arbitrability to the arbitrator.[2]

---

[2] Lyft also argues that this intent is confirmed by incorporation of the American Arbitration Association Commercial Arbitration Rules. See Brannstrom Decl. Exh. 4 at 22. Some courts have held that when an arbitration agreement incorporates rules that empower an arbitrator to decide issues of arbitrability, as is the case here with respect to the AAA Commercial Arbitration Rules, the incorporation itself serves as clear and unmistakable evidence of the parties' intent to delegate arbitrability to an arbitrator. See, e.g., Clarium, 2009 WL 331588, at *5. However, while this may be the rule with respect to disputes between sophisticated business entities, it does not necessarily extend to disputes involving consumers. See Ajamian v. CantorCO2e, L.P., 203 Cal. App. 4th 771, 790 (2012); Oracle Am. Inc. v. Myriad Group A.G., 724 F.3d 1069, 1075 n.2 (9th Cir. 2013); Tompkins v. 23andMe, Inc., No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014) ("the Ninth Circuit declined to hold that incorporation of arbitration rules shows 'clear and unmistakable evidence' of an agreement to delegate arbitrability when

United States District Court
Northern District of California

1    However, even where there is clear and unmistakable evidence of an intent to delegate

2  questions of arbitrability to the arbitrator, the enforceability of the delegation provision itself is a

3  separate, threshold issue for this Court to determine.  See Rent-A-Ctr., W., Inc. v. Jackson, 561

4  U.S. 63, 70-71 (2010) ("An agreement to arbitrate a gateway issue is simply an additional,

5  antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA

6  operates on this additional arbitration agreement just as it does on any other.  The additional

7  agreement is valid under § 2 'save upon such grounds as exist at law or in equity for the

8  revocation of any contract,' and federal courts can enforce the agreement by staying federal

9  litigation under § 3 and compelling arbitration under § 4.").  Plaintiffs argue that here, the

10  delegation provision itself is unenforceable because it is both procedurally and substantively

11  unconscionable and the Court, not an arbitrator, should decide the question of arbitrability.

### 2.    Procedural Unconscionability

13    "Procedural unconscionability concerns the manner in which the contract was negotiated

14  and the respective circumstances of the parties at that time, focusing on the level of oppression and

15  surprise involved in the agreement."  Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 922 (9th

16  Cir. 2013).  "Oppression addresses the weaker party's absence of choice and unequal bargaining

17  power that results in "no real negotiation."  Id. (quoting A & M Produce, 186 Cal.Rptr. at 122).

18  "Surprise involves the extent to which the contract clearly discloses its terms as well as the

19  reasonable expectations of the weaker party."  Id. (citing Parada v. Super. Ct., 176 Cal.App.4th

20  1554 (2009)).

21    Plaintiffs argue that the delegation clause is procedurally unconscionable because it is

22  contained in what is indisputably a contract of adhesion.  See Pokorny v. Quixtar, Inc., 601 F.3d

23  987, 996 (9th Cir. 2010) (quoting Ting v. AT&T, 319 F.3d 1126, 1148 (9th Cir. 2003)) ("contract

24  is procedurally unconscionable under California law if it is 'a standardized contract, drafted by the

25  party of superior bargaining strength, that relegates to the subscribing party only the opportunity to

27  consumers are involved).  However, regardless of any impact the incorporation of the AAA
Commercial Arbitration Rules may have on the delegation of enforceability and arbitrability, in

28  this case the arbitration agreement itself contains an express delegation clause so Lyft need not
rely on the AAA Commercial Arbitration Rules to support its arguments in favor of delegation.

1  adhere to the contract or reject it.'"); Aral v. EarthLink, Inc., 134 Cal. App. 4th 544, 557 (2005)

2  (clickwrap agreement presented on a take it or leave it basis procedurally unconscionable); Merkin

3  v. Vonage Am. Inc., No. 13-08026, 2014 WL 457942, at *6 (C.D. Cal. Feb. 3, 2014) ("Such 'take-

4  it-or-leave-it' contracts of adhesion are frequently found to be oppressive under California law.").

5  Lyft does not dispute that the delegation clause is contained in an adhesion contract, but

6  persuasively argues that this creates a low degree of procedural unconscionability and there are no

7  other factors making the delegation clause more procedurally unconscionable.  See Sanchez v.

8  Valencia Holding Co., LLC, 61 Cal 4th 899, 915 (2015) (internal citation omitted)  ("Here the

9  adhesive nature of the contract is sufficient to establish some degree of procedural

10  unconscionability.  Yet 'a finding of procedural unconscionability does not mean that a contract

11  will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to

12  ensure they are not manifestly unfair or one-sided.'").

13  　　　　Plaintiffs respond that the oppression of this adhesion contract is amplified because they

14  were required to assent to the TOS to "obtain a necessary source of income," and liken the TOS to

15  an employment agreement.  See Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 922 (9th Cir.

16  2013) (agreement to arbitrate procedurally unconscionable where employee could only agree to be

17  bound or seek work elsewhere).  Lyft contends that unlike in Chavarria, Plaintiffs are not

18  employees but rather independent contractors.  See Brannstrom Decl. Ex. 4 (2014 TOS) at 24

19  (specifying no employment relationship established by agreement and drivers are independent

20  contractors).  For purposes of this motion, the Court need not and does not decide the complex

21  question of whether Plaintiffs should be considered employees or independent contractors.   First,

22  even if Plaintiffs are considered employees, the bonus at issue is not for performing their regular

23  duties as drivers but instead for a separate referral program.  Furthermore, this dispute does not

24  involve any non-waivable statutory employment claims.  Instead, Plaintiffs' claims are limited to

25  breach of contract, fraud and negligent misrepresentation relating to an alleged failure to pay a

26  referral bonus and are far more akin to a consumer dispute than an employment dispute.

27  Additionally, even if the 2014 TOS is viewed through the lens of an employment contract, the

28  level of unconscionability still depends on whether there are other elements of oppression or

United States District Court
Northern District of California

1    surprise.  As the California Court of Appeals stated in <u>Serpa v. California Sur. Investigations, Inc</u>.,

2    215 Cal. App. 4th 695, 704 (2013), as modified (Apr. 19, 2013), as modified (Apr. 26, 2013)

3    (internal citations omitted), even though the potential employee there had no opportunity to

4    negotiate the terms of an agreement containing an arbitration agreement, "this adhesive aspect of

5    an agreement is not dispositive.  When, as here, there is no other indication of oppression or

6    surprise, 'the degree of procedural unconscionability of an adhesion agreement is low, and the

7    agreement will be enforceable unless the degree of substantive unconscionability is high.'"

8           As discussed below, Plaintiffs have not demonstrated any oppression or surprise beyond

9    that inherent in any adhesion contract, and there is thus a low degree of procedural

10   unconscionability.   Plaintiffs first rely on the fact that the 2014 TOS grants Lyft the unilateral

11   right to modify the TOS, including the delegation provision, without prior notice.  <u>See Merkin v.

12   Vonage Am. Inc</u>., No. 2:13-CV-08026-CAS, 2014 WL 457942, at *7 (C.D. Cal. Feb. 3, 2014)

13   (finding that a defendant's frequent exercise of its unilateral power to modify an adhesion contract

14   resulted in a high degree of oppression).  Though <u>Merkin</u> did discuss unilateral modification in the

15   context of procedural unconscionability, it clarified that its analysis turned on whether the

16   defendant's "actual and repeated modification of the TOS . . . 'result[ed] in no real negotiation and

17   an absence of meaningful choice,' thus making the TOS oppressive."  <u>Id</u>.  The court expressly

18   distinguished cases focused on whether the power of one party to unilaterally modify the contract

19   renders that contract substantively unconscionable.  <u>Id</u>. at *7 n.5.  Here, Plaintiffs do not argue that

20   Lyft modified the TOS so frequently or significantly as to make it oppressive and thus

21   significantly procedurally unconscionable, as was the case in <u>Merkin</u>.  Therefore, the effect of the

22   unilateral modification provision at issue in this case is examined later in this Order in the context

23   of substantive unconscionability.

24          Plaintiffs further contend that a "high degree of oppression" makes a showing of surprise

25   unnecessary to find procedural unconscionability, but Plaintiffs have not established a high degree

26   of oppression.  Alternatively, Plaintiffs argue that they were surprised because they "do not

27   remember ever seeing, signing, or agreeing to any arbitration agreement, or a corresponding

28   delegation clause."  Opp. at 8 (citing Loewen Decl. ¶ 6; Wright Decl. ¶ 4).  They argue that the

United States District Court
Northern District of California

United States District Court
Northern District of California

1   arbitration agreement is on page 22 of a 32 page agreement accessed from a hyperlink on a

2   website, and when the TOS is viewed via the Lyft App accessed from a mobile phone one has to

3   scroll "through countless pages of microscopic and cryptic text just to find and read the arbitration

4   agreement and corresponding delegation clause." Opp. at 9.  Plaintiffs cite one case involving

5   wage and hour and related violations of the Fair Labor Standards Act finding an employment

6   agreement procedurally unconscionable in part because the plaintiff did not remember signing the

7   arbitration agreement and did not know what arbitration meant.  See Perez v. Maid Brigade, Inc.,

8   No. C 07-3473 SI, 2007 WL 2990368, at *5 (N.D. Cal. Oct. 11, 2007). The Perez court found it

9   important that the plaintiff was a "maid who does not speak English," whereas the employer was a

10   company with access to legal counsel.  Id.  Unlike Perez, Plaintiffs here do not have a language

11   issue and this dispute does not directly concern their employment relationship.

12       Moreover, even if Plaintiffs could be considered employees, this is not an employment

13   dispute involving nonwaivable statutory rights as was the case in Perez, but rather is more akin to

14   a consumer dispute.  Plaintiffs' subjective inability to recall seeing the delegation clause (or the

15   arbitration agreement generally) is not a basis for finding procedural unconscionability in this

16   context.  See Blau v. AT&T Mobility, C-11-00541-CRB, 2012 WL 10546, at *4-5 (N.D.Cal. Jan.

17   3, 2012).  Lyft "was under no obligation to highlight the arbitration clause of its contract, nor was

18   it required to specifically call that clause to [Plaintiffs'] attention.  Any state law imposing such an

19   obligation would be preempted by the FAA."  See Sanchez v. Valencia Holding Co., LLC, 61 Cal.

20   4th 899, 914 (2015).

21       Further, neither Plaintiff can claim surprise with respect to the delegation clause, or the

22   arbitration clause generally, where they both assented to the terms of the TOS by clicking "I

23   agree" on the Lyft App, and Wright also agreed on the website.  Unlike in cases where a party

24   trying to enforce an arbitration agreement relies on a delegation provision in AAA rules referenced

25   but not included in the arbitration agreement, here the terms of the TOS were displayed on the

26   screen, Plaintiffs had the opportunity to scroll through the terms prior to assent, and the delegation

27   provision is expressly contained in the 2014 TOS under a bolded, large font heading relating to

28   arbitration.  This renders the TOS at most "minimally procedurally unconscionable."  See

Hodsdon v. DirecTV, LLC, No. C 12-02827 JSW, 2012 WL 5464615, at *5 (N.D. Cal. Nov. 8, 2012) (arbitration provision "minimally procedurally unconscionable because it is undisputedly a contract of adhesion" where no other indicia of procedural unconscionability found).  In their sur-reply, Plaintiffs also argue that Defendants should have required users to click "I agree" to the arbitration provision specifically, in addition to the TOS as a whole, to eliminate any surprise.  However, Plaintiffs do not cite any case requiring a separate assent to an arbitration provision in a click-through agreement, and the Court declines to create such a requirement here.

Plaintiffs also rely on Tompkins v. 23andMe, Inc., No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *14 (N.D. Cal. June 25, 2014), in which Judge Koh held that an adhesion contract was procedurally unconscionable.  The agreement there provided minimal notice to customers because it purported to bind all users and purchasers even though the website did not require users to acknowledge the TOS prior to purchase.  Moreover, even if customers located and clicked a hyperlink to the TOS, they had to hunt for the arbitration provision appearing at the very end of the TOS as a subparagraph to the final section titled "Miscellaneous," and then obtain and review separate AAA rules to determine objectionable provisions.  Plaintiffs argue that similarly here, even if they located the arbitration agreement on the website or Lyft App, they would then need to click on another hyperlink to evaluate the incorporated AAA rules.  However, this case differs significantly from Tompkins in that prospective drivers including Plaintiffs were required to view and assent to the TOS before accessing the Lyft App and Platform, the dispute resolution section of the TOS is clearly labeled, and there is a hyperlink to the AAA Rules.  The fact that the AAA rules were not included in the body of the TOS does not make the delegation clause procedurally unconscionable.  See Hodsdon v. DirecTV, LLC, No. C 12-02827 JSW, 2012 WL 5464615, at *5 (N.D. Cal. Nov. 8, 2012) ("recent cases have held that procedural unconscionability can be avoided if the arbitration rules are incorporated into the contract by reference, such incorporation is clear, and the rules are readily available").  In their sur-reply, Plaintiffs cite Haisha Corp. v. Sprint Solutions, Inc., No. 14CV2773-GPC MDD, 2015 WL 224407, at *8 (S.D. Cal. Jan. 15, 2015) for the position that Hodson is the minority view and failure to include a copy of the AAA rules contributes to procedural unconscionability.  However, Haisha also held that "based on

1  federal caselaw and state law rules of contract interpretation, incorporation by reference of the

2  arbitration rules is sufficient to excuse attachment of the arbitration rules as long as the rules are

3  easily accessible and the plaintiff has the means and capacity to retrieve them." Here, the AAA

4  rules were clearly incorporated by reference and linked by hyperlink in the 2014 TOS, and there is

5  no argument that the Rules were not also readily available elsewhere. Therefore Plaintiffs'

6  argument is unpersuasive.

7  Finally, Plaintiffs argue that there is an element of surprise because parties do not

8  ordinarily expect an arbitrator, rather than a court, to determine his or her own jurisdiction.

9  Plaintiffs rely on <u>Murphy v. Check 'N Go of Cal., Inc.</u>, 156 Cal. App. 4th 138, 145 (2007) and

10  <u>Bruni v. Didion</u>, 160 Cal. App. 4th 1272, 1295 (2008), <u>as modified</u> (Mar. 24, 2008). However,

11  more recent caselaw has called the reasoning of these cases -- i.e., that delegation is outside the

12  reasonable expectation of the parties -- into question without deciding the issue and determined

13  that, in any event, unexpected delegation by itself would not necessarily establish

14  unconscionability. See <u>Malone v. Superior Court</u>, 226 Cal. App. 4th 1551, 1570, n.20 (2014).

15  For all of the foregoing reasons, Plaintiffs have established a minimal degree of procedural

16  unconscionability as to the 2014 TOS. "Yet 'a finding of procedural unconscionability does not

17  mean that a contract will not be enforced, but rather that courts will scrutinize the substantive

18  terms of the contract to ensure they are not manifestly unfair or one-sided.'" <u>Sanchez v. Valencia</u>

19  <u>Holding Co., LLC</u>, 61 Cal. 4th 899, 915 (2015) (quoting <u>Gentry v. Superior Court</u>, 42 Cal. 4th

20  443, 469 (2008)).

21            **3.    Substantive Unconscionability**

22  An arbitration provision is substantively unconscionable if it is "overly harsh" or generates

23  "one-sided' results." <u>Armendariz</u>, 24 Cal.4th at 114; <u>see also Ingle v. Circuit City Stores, Inc</u>.,

24  328 F.3d 1165, 1172 (9th Cir.2003) (defining substantive unconscionability as whether the terms

25  of an agreement are so one-sided as to "shock the conscience"). The California Supreme Court

26  has recently clarified that "these formulations, used throughout our case law, all mean the same

27  thing" and are intended to "capture the notion that unconscionability requires a substantial degree

28  of unfairness beyond 'a simple old-fashioned bad bargain.'" <u>Sanchez v. Valencia Holding Co.</u>,

United States District Court
Northern District of California

1    LLC, 61 Cal. 4th 899, 911-12 (2015).  "Commerce depends on the enforceability, in most

2    instances, of a duly executed written contract. A party cannot avoid a contractual obligation

3    merely by complaining that the deal, in retrospect, was unfair or a bad bargain. Not all one-sided

4    contract provisions are unconscionable."  Id. at 911. Plaintiffs here argue that two terms of the

5    2014 TOS, as applied to the delegation provision, render the delegation provision substantively

6    unconscionable and unenforceable.

7                                    a.       Unilateral Right to Modify

8              Plaintiffs first argue that the delegation provision is substantively unconscionable because

9    the 2014 TOS grants Lyft the unilateral right to modify the TOS, including the delegation

10   provision, without prior notice.  See Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1179 (9th

11   Cir. 2003) ("By granting itself the sole authority to amend or terminate the arbitration agreement,

12   Circuit City proscribes an employee's ability to consider and negotiate the terms of her contract.

13   Compounded by the fact that this contract is adhesive in the first instance, this provision embeds

14   its adhesiveness by allowing only Circuit City to modify or terminate the terms of the agreement.

15   Therefore, we conclude that the provision affording Circuit City the unilateral power to terminate

16   or modify the contract is substantively unconscionable.").

17             However, in Ashbey v. Archstone Prop. Mgmt., Inc., No. 12-55912, 2015 WL 2193178, at

18   *1 (9th Cir. May 12, 2015), albeit an unpublished and therefore non-precedential case, the Ninth

19   Circuit has recently explained, based on a recent California case, that unilateral modification

20   provisions "are not substantively unconscionable because they are always subject to the limits

21   'imposed by the covenant of good faith and fair dealing implied in every contract.'"  Id. (quoting

22   Serpa v. Cal. Sur. Investigations, Inc., 215 Cal. App. 4th 695, 706 (2013)).  Because the plaintiff

23   in Ashbey did not plead that the defendant acted unreasonably to alter the contract terms,

24   including the arbitration clause, so as to breach the implied covenant of good faith and fair

25   dealing, there was no substantive unconscionability and therefore the Court did not even discuss

26   procedural unconscionability.  Id.  The California appellate court decision in Serpa was decided

27   after Ingle, and several decisions of federal courts have since followed Serpa rather than Ingle.

28   See, e.g., Tompkins v. 23andMe, Inc., 2014 WL 2903752 (N.D.Cal. June 25, 2014), *17

United States District Court
Northern District of California

15

1    (unilateral modification provision separate from arbitration provision and no showing of how it

2    specifically rendered the arbitration clause substantively unconscionable); but see Mohamed v.

3    Uber Technologies, Inc., 2015 WL 3749716 (N.D.Cal. June 9, 2015) (predicting that California

4    Supreme Court would hold that unilateral modification provision substantively unconscionable).

5    Plaintiffs  respond that the covenant of good faith and fair dealing relates to whether a contract as

6    a whole is illusory, not whether an arbitration provision is substantively unconscionable, and cites

7    cases distinguishing these two doctrines.  See, e.g., Dominguez v. Alden Enterprises, Inc., No.

8    B203182, 2009 WL 27156, at *8 (Cal. Ct. App. Jan. 6, 2009) (even though a unilateral

9    modification provision might not render a contract illusory as a whole, a unilateral modification

10   provision that did not provide for notice was substantively unconscionable because "it insert[ed]

11   an element of unduly harsh or oppressive results"); McLemore v. Circuit City Stores, Inc., 2005

12   WL 1634981, at *5 (Cal. Ct. App. July 13, 2005) (same).

13         As was the case in Tompkins, here the unilateral modification provision is entirely separate

14   from the delegation provision so it is unclear to what extent it should be considered in this context.

15   Further, the Court finds it unnecessary to delve into the complex issue of the overlap between the

16   concepts of illusory contracts and unconscionable contract terms as applied to this unilateral

17   modification provision, because the Court assumes without deciding that the unilateral

18   modification provision here is at least minimally substantively unconscionable.  The provision

19   gives Lyft the one-sided power to modify its TOS by posting amended terms, and Lyft appears to

20   have exercised that power on at least one occasion.  The Court is unpersuaded by Lyft's argument

21   that the unilateral modification provision is not implicated because Lyft has not sought to enforce

22   the provision against either Plaintiff.  Lyft relies on Meyer v. T-Mobile USA Inc., 836 F.Supp.2d

23   994, 1003 (N.D.Cal. 2011), where the court held that the plaintiff lacked standing to challenge a

24   unilateral update provision where it had not been applied to her.  However, unconscionability is

25   evaluated at the time the contract went into effect and not how it may be applied in the future, so

26   the Court declines to adopt the reasoning of Meyer.  Lyft also argues that Plaintiff Loewen cannot

27   claim that the unilateral modification provision is unconscionable where he is seeking to enforce

28   the provision against himself by arguing that the 2014 TOS, as opposed to the 2013 TOS, applies

United States District Court
Northern District of California

to him, and he should not be allowed to use the provision both offensively and defensively. However, the unilateral modification provision is a part of the agreement at issue, and whether or not it is unconscionable does not depend on who is trying to enforce it.

### b.       Excessive Costs and Fees

Plaintiffs also argue that the delegation clause is substantively unconscionable because the 2014 TOS adopts the AAA Commercial Arbitration Rules, rather than the AAA Employment or Consumer Arbitration Rules.  All of these AAA rules are before the Court because they are attached to Plaintiffs' Request for Judicial Notice (Dkt. No. 24-4) and Supplemental Request for Judicial Notice (Dkt. No. 26-1) and Defendant's Request for Judicial Notice (Dkt. No. 33).  As no party has challenged or questioned the accuracy of these submissions, the requests for judicial notice are GRANTED and the Court has considered the various AAA rules submitted.

According to Plaintiffs, the AAA Commercial Arbitration Rules impermissibly require Plaintiffs to pay excessive administration fees not normally associated with litigation, because they require the party bringing a claim to pay the entire filing fee up front (the fee depends on the amount of the claim) and divide other arbitration-related costs equally between the parties.  See Pl.'s RJN Ex. D at 28, 38-39, 42.  In contrast, the AAA Employment and Consumer Arbitration Rules require employers to pay all costs unique to arbitration (such as arbitrator compensation and expenses, administrative and room rental fees) while the employee/consumer is only required to pay a $200 filing fee.  See RJN Ex. B (AAA Employment Rules) at 32-34; Ex. C (AAA Consumer Rules) at 34-35.

Plaintiffs initially contended that, under the AAA Commercial Rules, the filing fee in this case could be $7,700 to $12,900 in light of their $5 million class action claim.  They argued that this would impose a "significant financial burden" on them and deter them from bringing their claims.  See RJN Ex. D at 39; Wright Decl. ¶ 8; Loewen Decl. ¶ 10.  However, the AAA Supplementary Rules for Class Arbitration apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the AAA rules where a party submits a dispute to arbitration on behalf of a purported class, and the Supplementary Rules govern in the case of any inconsistency with other AAA rules.  See Pl.'s Supp. RJN Ex. E.  During oral argument, Plaintiffs

United States District Court
Northern District of California

conceded that the AAA Supplementary Rules for Class Arbitration could apply to this dispute, but argued that they would first have to pay the AAA Commercial Rules filing fee to be assigned an arbitrator who will then decide what rules to apply and whether to allow a class arbitration to proceed.   Plaintiffs appear to misinterpret the Supplementary Rules.  Under the Supplementary Rules, an initial filing fee of $3,350 is "payable in full by a party making a demand for treatment of a claim . . . as a class action," with supplemental fees to be paid by the requesting party in accordance with the AAA Commercial Arbitration Rules fee schedule only if the arbitration proceeds beyond the "clause construction award" phase.  Id.  Thus, at most Plaintiffs would be required to pay an initial fee of $3,350 to initiate the arbitration process.  Further, the arbitrator must apply the AAA Rules most appropriate to the dispute.  See RJN Ex. C at R-1(a)(4) (consumer rules apply where an arbitration agreement is contained within a consumer agreement that specifies a particular set of rules other than the consumer rules); RJN Ex. D at R-1 (employment disputes must be administered under AAA Employment Rules).  Given the nature of this dispute involving common law, consumer-type claims, it is very unlikely that AAA would apply its Commercial Rules to this dispute despite their identification in the 2014 TOS.

Lyft also contends that the 2014 TOS does not require the application of the AAA Commercial Arbitration Rules because it states that the arbitration will be conducted under the Commercial Arbitration Rules "or as otherwise mutually agreed by you and we."  Brannstrom Decl. Ex. 4 (2014 TOS) at 22.  Lyft argues that this phrase makes application of the AAA Commercial Arbitration Rules optional and therefore the fees associated with these rules do not necessarily apply.  Lyft cites Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp., 194 Cal. App. 4th 704, 713-14 (2011), in which the court of appeals could not conclude that a plaintiff would incur prohibitive AAA Commercial Arbitration fees as the rules were not in the record and therefore the court could not determine whether the rules required AAA arbitration of the dispute. However, given that Lyft is seeking to enforce the arbitration agreement and compel AAA arbitration, the parties have not agreed to any other rules or forum, and the AAA Commercial Arbitration Rules are in the record, Lyft's argument is unpersuasive.

Lyft also argues that under the AAA Commercial Arbitration Rules fee schedule, the filing

United States District Court
Northern District of California

fee for a claim under $75,000 is $750. Plaintiffs have not contested the class action waiver in connection with the 2014 TOS, and their individual claims relate to a $1,000 promotion. Therefore, according to Lyft, their individual claims are less than $75,000 and at most they would be required to pay a $750 fee to initiate individual arbitration. See Blau v. AT&T Mobility, 2012 WL 10546, *8 (N.D.Cal. Jan. 3, 2012) (ignoring class costs given class action waiver). However, it appears that Plaintiffs intend to attempt to pursue relief on behalf of a class despite the express class action waiver in the 2014 TOS. Assuming without deciding that Plaintiffs could be required to pay as much as $3,350 under the applicable AAA Rules to initiate class arbitration and have an arbitrator decide the issue of whether the arbitration can proceed on a classwide basis, the question is whether the incorporation of these AAA arbitration rules renders the delegation provision substantively unconscionable and, if so, to what degree.

Plaintiffs rely heavily on Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 110-11 (2000), where the California Supreme Court concluded that, "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." However, the California Supreme Court has subsequently limited its holding in Armendariz to cases concerning nonwaivable statutory rights such as those under the Fair Employment and Housing Act, Cal. Govt. Code § 12900, et seq. ("FEHA"), and it does not necessarily extend to common law, consumer-type claims such as those asserted by the Plaintiffs here. See Boghos v. Certain Underwriters at Lloyds of London, 36 Cal. 4th 495, 507 (2005).

As noted above, following oral argument on this motion, the California Supreme Court issued a decision in Sanchez v. Valencia Holding Co., LLC, 61 Cal. 4th 899 (2015). Sanchez involved a consumer dispute where a car dealer sought to enforce an arbitration agreement contained in a form contract against a luxury car purchaser. Sanchez clarified California's test for unconscionability, and held that the arbitration clause in question was not sufficiently substantively unconscionable to be unenforceable. Relevant to this case, Sanchez discussed a provision in the arbitration agreement concerning appellate arbitration filing fees and costs.

United States District Court
Northern District of California

1    Specifically, the agreement in <u>Sanchez</u> provided that "the appealing party requesting new

2    arbitration shall be responsible for the filing fee and other arbitration costs subject to a final

3    determination by the arbitrators of a fair apportionment of costs." <u>Id</u>. at 908.  The appellate court

4    had held that this clause was unconscionable because it was inadequate for consumers who could

5    not afford to initiate the appeal process given the large costs involved.  <u>Id</u>. at 909-910.

6            The California Supreme Court reversed.  The Court noted that, "[i]n the context of

7    mandatory employment arbitration of unwaivable statutory rights, we have held that arbitration

8    agreement 'cannot generally require the employee to bear any type of expense that the employee

9    would not be required to bear if he or she were free to bring the action in court." <u>Id</u>. at 918

10   (quoting <u>Armendariz</u>, 24 Cal. 4th at 110-111).  The Court reaffirmed its "categorical approach" for

11   employment disputes in light of the "particularly acute" economic pressure on job seekers to sign

12   an employment contract containing an arbitration agreement.  <u>Id</u>. at 919-920.  However, the Court

13   distinguished disputes involving consumer protection statutes, and for consumer disputes adopted

14   a case-by-case determination of affordability of arbitration fees.  <u>Id</u>.  The Court stated that the

15   requirement that the consumer front the appellate filing fees or other arbitration costs had the

16   potential to deter the consumer from using the appeal process, but determined that the fee

17   provision could not be deemed unconscionable absent a showing that the "fees and costs in fact

18   would be unaffordable or would have a substantial deterrent effect" in the case before it.  <u>Id</u>. at

19   920.  In <u>Sanchez</u>, the Court held that the plaintiff was purchasing a high end luxury item when he

20   entered into the contract, and there was no evidence to suggest that he could not afford the cost of

21   the appellate filing fees, so the fee provision was not substantively unconscionable as applied to

22   him.  <u>Id</u>. at 921.  Based on the Court's analysis in <u>Sanchez</u>, the relevant questions here are: 1) if

23   this is viewed as an employment dispute, whether the arbitration rules impose "any type of

24   expense that the employee would not be required to bear if he or she were free to bring the action

25   in court;" or 2) if this is viewed as a consumer dispute, under the facts of this case whether the

26   "fees and costs in fact would be unaffordable or would have a substantial deterrent effect" on the

27   Plaintiffs.  Even assuming arguendo that this case could be viewed as an employment dispute, a

28   view the Court does not endorse given the common law, consumer-type claims at issue, it does not

                                                  20

appear that the AAA Rules impose any type of expense that Plaintiffs would not be required to pay in court.

The Court is aware that some courts following Armendariz have held that the AAA Commercial Rules fee schedule is substantively unconscionable where a stronger party attempts to impose it on a weaker party in the employment context.  See, e.g., Dunham v. Environmental Chem. Corp., 2006 WL 2374703, at *9 (N.D.Cal. Aug. 16, 2006) (stating that the cost sharing provision of the commercial rules is unconscionable under Armendariz as applied to employees, but not deciding which set of arbitration rules applied to the case).  Additionally, in Mohamed v. Uber Technologies, Inc., __ F. Supp. 3d __, 2015 WL 3749716, at *1, 15 n.24 (N.D.Cal. June 9, 2015), the court denied the defendants' motion to compel arbitration of a dispute involving a transportation service's use of background checks in its hiring and firing decisions in violation of the Fair Credit Reporting Act.  The court held that a delegation clause was substantively unconscionable where the arbitration agreement provided for the application of JAMS rules that would require the employee-claimant to "pay a number of hefty fees of a type he would not normally pay in court" and "advance his pro rata portion of these fees just to get the arbitration started, and just to determine whether he needs to arbitrate his claims at all."  Id. at *29.  The court cited evidence that the plaintiff would be unable to pay the arbitration fee required to litigate even the limited issue of arbitrability under the delegation clause, and held that the delegation clause was therefore substantively unconscionable.  Id.  However, Mohamed was decided before Sanchez.  Moreover, it was an employment dispute involving nonwaivable statutory rights as opposed to the common law claims at issue here, and examined JAMS fees that appear to be larger than those at issue here.  Further, the Mohamed court was primarily focused on an express, non-severable Private Attorney General Act, Cal. Labor Code § 2698, et seq. ("PAGA") waiver as a reason to invalidate the entire agreement, and held that four other unconscionable provisions (including the fee provision), *taken together*, permeated the agreement with unconscionability while alone they would not.  Id. at *31.  Two of the four provisions deemed unconscionable in Mohamed are not even at issue with respect to the delegation clause here.

Here, though the initial filing fee (which the Court assumes could be as high as $3,350) is

United States District Court
Northern District of California

higher for arbitration than for litigation, the AAA Rules are flexible and provide mechanisms to waive or apportion fees and for low-cost arbitration.  See RJN Ex. D (AAA Commercial Rules) at 39 (fee schedule), 26 (fees can be apportioned in interim or final award), 28 (hardship waiver), 34 (low cost arbitrations for small claims); Lyft RJN Ex. 1 (describing procedures for administrative fee waivers and pro bono arbitrations).  In light of these protective provisions within the AAA Rules, the general reference to the AAA Commercial Rules is not a significantly substantively unconscionable term.  See Tompkins v. 23andMe, Inc., No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *17 (N.D. Cal. June 25, 2014) (holding that a filing fee of $975 under the AAA Commercial Rules to pursue a claim relating to a $95 purchase did not "'shock[] the conscience,' particularly relative to litigation expenses."); see also DiGiacomo v. Expression Center for New Media, Inc., 2008 WL 4239830 (N.D.Cal. Sept. 15, 2008) (refusing to find fee structure of AAA commercial arbitration rules substantively unconscionable because the rules provide for the waiver of fees and therefore "do not require plaintiff to bear any type of overly-harsh expense or unconscionable cost  that he would not be required to incur in litigation"); Chavez v. Bank of America, 2011 WL 4712204 (N.D.Cal. Oct. 7, 2011) (application of AAA commercial rules and associated fee provision did not render arbitration agreement unconscionable in light of special rules for consumer disputes that contained a separate fee schedule making arbitration more reasonable for consumers; $700 filing fee for claim of a "couple of hundred dollars" did not shock the conscience).

Similarly, if this is viewed as a consumer dispute, there is insufficient evidence that the AAA fees Plaintiffs would be required to pay are unaffordable or would have a substantial deterrent effect on their pursuit of arbitration.  As discussed above, the AAA Rules have procedures for fee waivers and hardship provisions and the parties appear to agree that Plaintiffs would likely qualify for a reduced arbitration fee given their income and assets.[3]  Plaintiffs claim

---

[3] Lyft initially took the position that there was insufficient evidence of Plaintiffs' financial condition and assets at the time they entered into the agreement.  However, in its response to Plaintiffs' sur-reply, Lyft argues that Plaintiffs would likely be eligible for a hardship waiver under the AAA rules because their income appears to be less than 300% of the federal poverty guidelines.  See Response at 3 n.2.

1    in their declarations that they earn approximately $2,000 to $3,000 per month, and that paying a

2    filing fee under the AAA Commercial Rules would impose a significant financial burden on them.

3    However, these declarations were based on Plaintiffs' mistaken understanding of the AAA fee

4    schedule and their belief that they would be responsible for approximately $7,000 to $12,000 in

5    arbitration filing fees based on their own valuation of their class claims under the AAA

6    Commercial Rules, as opposed to the $3,350 under the AAA Supplementary Class Action Rules.

7    Additionally, Plaintiffs paid this Court's approximately $400 filing fee without requesting a

8    waiver, and do not explain why they could not pay the arbitration filing fee or request a fee waiver

9    from AAA.

10        Plaintiffs rely on Gutierrez v. Autowest, Inc., 114 Cal. App. 4th 77 (2003), as modified on

11   denial of reh'g (Jan. 8, 2004), where the court held that application of the AAA Commercial Rules

12   fee provision to a consumer class action dispute involving an adhesive contract that mandated

13   arbitration, where there was evidence that the consumer could not pay, was "unduly harsh and

14   one-sided, defeats the expectations of the nondrafting party, and shocks the conscience."

15   However, in Gutierrez, the parties agreed about the amount of fees to be paid, there was no dispute

16   about the ability to pay, and there was no class action waiver in the arbitration agreement.

17   Further, on remand, the Gutierrez trial court was directed to exercise its discretion as to whether to

18   sever the fee provision and enforce the arbitration provision.

19        In sum, with respect to the threshold issue of the delegation provision, the Court finds that

20   procedural unconscionability is inherently present because the contract is one of adhesion, but the

21   degree of procedural unconscionability is low.  The contract is also at most minimally

22   substantively unconscionable in light of the unilateral modification provision and the reference to

23   the AAA Commercial Rules and the implicit incorporation by reference of its corresponding fee

24   structure.   Under the sliding scale approach, "[b]ecause the degree of procedural

25   unconscionability is minimal, the agreement is unenforceable only if the degree of substantive

26   unconscionability is high."  Serafin v. Balco Properties Ltd., LLC, 235 Cal. App. 4th 165, 185

27   (2015), review denied (June 10, 2015) (internal citations omitted).  In light of the low degree of

28   both procedural and substantive unconscionability present in the 2014 TOS, the delegation clause

1    is enforceable.  Therefore, the Court need only consider whether Lyft's demand for arbitration is

2    "wholly groundless" before deferring the question of arbitrability to the arbitrator.

3        **B.    Lyft's Demand for Arbitration is Not "Wholly Groundless"**

4        The arbitration provision of the 2014 TOS broadly provides that, 'You and We agree that

5    any legal disputes or claims arising out of or related to the Agreement (including but not limited to

6    the use of the Lyft Platform and/or the Services, or the interpretation, enforceability, revocability,

7    or validity of the Agreement, or the arbitrability of any dispute), that cannot be resolved

8    informally shall be submitted to binding arbitration in the state in which the Agreement was

9    performed."  Brannstrom Decl. Ex. 4 at 22.  Plaintiff argues that Lyft's demand for arbitration is

10   wholly groundless and arbitration should not be compelled because the arbitration clause does not

11   extend to their claims for breach of contract, fraud and negligent misrepresentation arising from

12   Lyft's alleged failure to pay referral bonuses in connection with the Promotion.  Plaintiffs contend

13   that if Lyft had wanted to arbitrate this dispute, it should have drafted a broader arbitration clause.

14       Given the broad arbitration clause in the 2014 TOS, it covers the claims at issue here.   See

15   Simula Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) (the phrase "arising out of or

16   relating to" in an arbitration agreement must be construed broadly, and the factual allegations at

17   issue "need only 'touch matters' covered by the contract containing the arbitration clause and all

18   doubts are to be resolved in favor of arbitration."); see also Mitsubishi Motor Corp. v. Soler

19   Chrysler-Plymouth, Inc., 473 U.S. 614, 624 n.13 (1985).  The entire dispute arises from an alleged

20   failure to pay bonuses for signing new drivers up to the Lyft Platform as part of the Promotion,

21   and every step of the process for becoming a new driver as part of the Promotion was facilitated

22   by the Lyft Platform and governed by the TOS.  Thus, the dispute directly "touches" the subject

23   matter of the 2014 TOS, which governs all aspects of driving for Lyft, as well as the Lyft

24   Platform, which Lyft drivers are required to use.  As the Court previously held in its Order

25   denying Plaintiff's motion to compel discovery, "given the broad scope of the 2014 TOS

26   arbitration provision, it is not 'wholly groundless' for Lyft to contend that it covers Plaintiffs'

27   claims here."  Dkt. No. 23.

28       **C.    The Delegation Provision Covers Both Enforceability and Arbitrability**

United States District Court
Northern District of California

24

United States District Court
Northern District of California

Plaintiffs also argue that even if the delegation clause is enforceable, it does not clearly and unmistakably delegate the issue of enforceability (as opposed to arbitrability, which Plaintiffs appear to concede is clearly and unmistakably delegated if the clause is enforceable), so this Court must evaluate enforceability of the arbitration agreement as a whole.  Specifically, Plaintiffs argue that because "the Agreement" is defined as the entire TOS and is not limited to the arbitration provision, the delegation clause is not clear and unambiguous that enforceability of the arbitration provision, as opposed to the TOS as a whole, is delegated to the arbitrator.   Plaintiffs attempt to create ambiguity where none exists.  The arbitration provision itself clearly and unambiguously delegates both arbitrability and enforceability of the arbitration provision to the arbitrator.[4]

**D.      Stay or Dismiss**

Because the Court concludes that arbitration should be compelled, it has the discretion to stay the case under 9 U.S.C. § 3 or dismiss the litigation entirely.  See Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir.1988); see also Hopkins & Carley, ALC v. Thomson Elite, No. 10–CV–05806–LHK, 2011 U.S. Dist. LEXIS 38396, at *28 (N.D.Cal. Apr. 6, 2011) ("Where an arbitration clause is broad enough to cover all of a plaintiff's claims, the court may compel arbitration and dismiss the action.").   Neither side has presented any compelling reason to keep this case on the Court's docket and the case is hereby dismissed.  See Tompkins v. 23andMe, Inc., No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *18 (N.D. Cal. June 25, 2014) (compelling arbitration and dismissing rather than staying case because parties had not identified any concerns about statute of limitations and dismissal would render the decision immediately appealable).

**VI.      CONCLUSION**

Because the delegation clause is enforceable and Lyft's demand for arbitration is not

---

[4] Plaintiffs also argue that reference to the AAA Commercial Arbitration Rules is insufficient evidence of clear and unmistakable intent to delegate the issue of enforceability of the arbitration provision.  These Rules provide that an arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."  RJN Ex. D at 13.  Plaintiffs cite cases holding that mere reference to the Commercial Rules is insufficient to delegate authority in contracts of adhesion in the context of consumer disputes.  However, in this case there is an express delegation clause in addition to reference to the AAA Commercial Arbitration Rules, so these cases are inapposite.  See also supra fn.1.

wholly groundless, the Court hereby GRANTS Lyft's Motion to Compel Arbitration and Dismiss the Action.

**IT IS SO ORDERED.**

Dated:   September 15, 2015



ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
Northern District of California